**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. _____**

RESTLESS MEDIA GMBH,

     Plaintiff,

vs.

THOMAS E. "TED" JOHNSON, MILESTONE MOTORCARS SALES LLC,
MILESTONE MOTORCARS LLC, RICHARD COLE, RICK COLE AUCTIONS,
INCORPORATED, DONALD E. WILLIAMS, THE BLACKHAWK COLLECTION, and
DOES 1-100 inclusive,

     Defendants.

_____/

**COMPLAINT**

     Plaintiff, Restless Media GmbH ("Plaintiff" or "RMG"), through its undersigned counsel,

hereby sues Defendants, Thomas E. "Ted" Johnson, Milestone Motorcars Sales LLC, and

Milestone Motorcars LLC (collectively, the "Johnson Defendants"), Richard Cole and Rick Cole

Auctions, Incorporated (collectively, the "Cole Defendants"), and Donald E. Williams and the

Black Hawk Collection (collectively, the "Williams Defendants"), and alleges as follows:

**INTRODUCTION**

     1.     This is an action to redress a coordinated scheme by certain vintage car dealers to

defraud Plaintiff and others in connection with the purchase and sale of certain vintage

automobiles.  As described herein, the defendant vintage car dealers accomplished their fraud

using a tangled web of undisclosed transactions, blatant misrepresentations of sales prices, the

purveyance of fraudulent invoices, and under-the-table mixing of consideration on purportedly

distinct transactions—including the forgiveness of personal debts between the dealers at issue

and the application of undisclosed inter-dealer credits on one transaction for use towards other

transactions.

2.      As alleged herein, the defendant vintage car dealers engaged in and facilitated the perpetration of fraud and deceit on both Plaintiff and subsequent purchasers in connection with the sale of a certain 1935 Bugatti Type 57 automobile, VIN #57322, owned by the Plaintiff (the "Bugatti"), and in connection with the purported purchase of a certain 1973 Ferrari Daytona, VIN #16907, from the Cole Defendants (the "Cole Ferrari"), purportedly on Plaintiff's behalf. As explained below, the Defendants misrepresented the sales price of both vehicles, failed to disclose under-the-table transactions between them regarding those vehicles, and mixed consideration between these and other transactions—all the while, not only failing to inform Plaintiff of the true facts, but actively deceiving Plaintiff regarding the same.

3.      After agreeing to act as Plaintiff's "agent" in connection with the sale of the Bugatti, the Johnson Defendants went on to sell the Bugatti to the Williams Defendants (whom they had known and dealt with for decades) in August 2021.  However, the Johnson Defendants did not inform Plaintiff of the sale, much less did they obtain Plaintiff's permission or authorization to engage in the sale transaction (nor did they obtain power of attorney). Moreover, instead of using the legal title to sell the car (which would have required Plaintiff's consent and signature on the title), they instead purported to sell the Bugatti as a "dealer to dealer" transaction using only a "bill of sale"—even though the Bugatti was owned not by the dealer, but by Plaintiff.

4.      Finally, in mid-October 2021—two (2) months after the car was sold—the Johnson Defendants informed Plaintiff of the sale.  Specifically, they sent Plaintiff an invoice dated August 18, 2021, indicating that the Bugatti was sold to the Williams Defendants at a purchase price of $750,000 (*see* Exhibit B hereto).  Plaintiff is informed and believes, however, that this was not the true purchase price paid for the Bugatti.

5.      Upon investigation, Plaintiff discovered, according to an invoice obtained independently from the Williams Defendants (with the purchaser's information redacted) (*see*

Exhibit E hereto), that the Bugatti was purportedly sold to another party on August 19, 2021—the day after the car was purportedly sold to the Williams Defendants—at a purchase price of $1.5 million—twice the purchase price represented on the invoice produced by the Johnson Defendants.  Furthermore, Plaintiff later discovered that the Bugatti was posted on the Cole Defendants' Instagram account on October 19, 2021 as having been sold by the Cole Defendants—despite the fact that the same Bugatti was also posted on the Williams Defendants' Instagram account on October 6, 2021 as having been sold by the Williams Defendants.  Plaintiff is informed and believes that the Johnson Defendants, the Williams Defendants, and the Cole Defendants—each of whom had known and done deals with each other for decades—engaged in self-dealing and under-the-table transactions intended to defraud Plaintiff, misrepresent the purchase price and true value of the Bugatti to Plaintiff, and retain the benefits for themselves.

6.     At approximately the same time as the Johnson Defendants agreed to act as Plaintiff's agent in the sale of the Bugatti, they also agreed to act as Plaintiff's agent in connection with the contemplated purchase of a vintage Ferrari.  After reviewing various Ferrari options, Plaintiff expressed interest in a certain 1972 Ferrari Daytona, VIN #15299, which had been certified "platinum" level by the Ferrari Club of America (the "Platinum Ferrari").  The Platinum Ferrari had been located and presented to Plaintiff by the Johnson Defendants, and Plaintiff authorized the Johnson Defendants to proceed with negotiating the purchase of the Platinum Ferrari on Plaintiff's behalf.

7.     However, instead of purchasing the Platinum Ferrari, on or about August 30, 2021, the Johnson Defendants went on to purchase, purportedly on Plaintiff's behalf, a different Ferrari—*viz.*, the Cole Ferrari—which was owned personally by defendant Rick Cole, and which looked nearly identical to the Platinum Ferrari.  However, the Johnson Defendants had never even presented the Cole Ferrari to Plaintiff as a purchase option prior to completing the transaction.  Moreover, not only did the Johnson Defendants fail to obtain Plaintiff's permission or authorization to engage in this transaction, they did not even inform Plaintiff of the Cole

Ferrari purchase until a month and a half after completing the transaction.

8.      Finally, in mid-October 2021, the Johnson Defendants informed Plaintiff that the Cole Ferrari—which, notably, they failed to identify as a *different vehicle* than the Platinum Ferrari that Plaintiff had asked them to negotiate—had been purchased at a purchase price of $750,000—the exact same price as they represented that the Bugatti had been sold for.  The Johnson Defendants then sent Plaintiff a purported invoice from defendant Rick Cole Auctions (*see* Exhibit C hereto), purporting to show that the Cole Ferrari had been purchased on September 30, 2021 at a "Total Sale Price" of "$750,000."

9.      However, the invoice sent to Plaintiff by the Johnson Defendants turned out to be forged and falsified.  According to the true invoice, obtained independently from the Cole Defendants, the Cole Ferrari was actually purchased on August 30, 2021 at a "Total Sale Price" of "$575,000" (*see* Exhibit D hereto).

10.      In subsequent correspondence, the Johnson Defendants admitted that the true purchase price of the Cole Ferrari was $575,000, not $750,000—but claimed that the remainder of the purchase price was more or less made up for by certain "other consideration" involved in the transaction that had not been disclosed to Plaintiff.  Although the Johnson Defendants at first refused to say what this "other consideration" was, they subsequently represented (on January 10, 2022) that it involved the forgiveness of an independent prior debt and a credit towards another independent transaction—which Plaintiff is informed and believes to be an undisclosed transaction transferring the Bugatti to the Cole Defendants for subsequent sale.  Plaintiff was never informed about any such transaction, nor was Plaintiff ever informed that Defendants had mixed consideration for the Cole Ferrari purchase with other transactions.

11.      When confronted with their wrongdoing, the Johnson Defendants expressed surprise that Plaintiff objected to the transfer of the Bugatti without authorization because this was the way they did things all the time and "no one ever complained about it before."  They also attempted to brush aside the fraud and misrepresentations regarding the sales prices of the

two vehicles, saying that the vehicles were worth about the same amount anyway, so the actual sales prices did not really matter.

12.    Based on the foregoing, and as further explained below, Plaintiff was thus forced to bring this action to redress the ongoing and concerted fraud and other illegal acts described herein.  Based on the fraudulent and illegal acts described herein, Plaintiff is entitled to special, compensatory, and punitive damages—including, at a minimum, no less than $1,500,000 in compensatory damages, plus treble damages, punitive damages, costs and attorneys' fees, and other damages according to proof.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because, as stated in paragraphs 16 through 24 below, for purposes of diversity jurisdiction, Plaintiff is a citizen of Germany, and the Johnson Defendants are each citizens of the State of Florida, the Cole Defendants are each citizens of the State of Texas, and the Williams Defendants are each citizens of the State of California, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  In addition and independently, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under the R.I.C.O. statute, 18 U.S.C. §§ 1961-1968, arise under the Constitution, laws, or treaties of the United States.

14.    This Court has personal jurisdiction over the Johnson Defendants because the Johnson Defendants are citizens of the State of Florida and reside in and conduct business in this state, including the primary conduct that forms the basis of the allegations herein.  This Court has personal jurisdiction over the Cole Defendants and the Williams Defendants because they have committed tortious acts in the State of Florida, including by engaging in and facilitating a substantial part of the transactions and illegal conduct at issue herein.  The Cole Defendants and Williams Defendants have caused injury to property within the State of Florida—namely, the

Cole Defendants and Williams Defendants have caused injury to the Bugatti and the Ferrari through their conduct described herein—at the time that they were engaged in solicitation or service activities within Florida.  Finally, the Cole Defendants and Williams Defendants have engaged in substantial and not isolated activities in the State of Florida because, on information and belief, the Cole Defendants and Williams Defendants have spent many decades of buying and selling cars to dealers and customers in Florida, attending and appearing at car shows in Florida, and having car repair and restoration services performed in Florida.

15.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and (3).

## **PARTIES**

16.     Plaintiff, RMG, is a corporation organized and existing under the laws of Germany with its principal place of business in Grünwald, Germany.  RMG is managed by its managing director, Dr. Florian Lechner, who resides in Munich, Germany.  RMG is a closely held corporation that purchases and holds cars on behalf of Bradley Birkenfeld, who is the sole owner of RMG.  Mr. Birkenfeld resides in Malta.

17.     On or about December 28, 2021, for valid consideration, Mr. Birkenfeld transferred and assigned all of his rights and interest in the Bugatti and the Ferrari referenced in this Complaint, including any and all legal claims relating thereto, to Plaintiff.  Mr. Birkenfeld previously transferred and assigned all of his rights and interest in three (3) other luxury vehicles to Plaintiff in March and April 2021, before the transactions at issue herein occurred or were contemplated.

18.     Defendant Thomas E. "Ted" Johnson is an individual citizen of the United States and resides in the state of Florida within the Southern District of Florida.  Defendant Johnson is in the business of purchasing and selling and restoring vintage cars.  Plaintiff is informed and believes that Johnson is the founder, owner, and manager of Defendants Milestone Motorcars LLC and Milestone Motorcars Sales LLC (collectively, "Milestone").

6

19.     Defendant Milestone Motorcars LLC is a Florida limited liability company with its principal place of business at 3300 Southwest 14th Place, Boynton Beach, FL 33426.  As relevant here, Milestone Motorcars is engaged in the business of purchasing and selling and restoring vintage cars.  Plaintiff is informed and believes that Milestone Motorcars and all of its members, and any and all of the partners or members of any and all partners or members thereof, are citizens of the United States and reside in the state of Florida.

20.     Defendant Milestone Motorcars Sales LLC is a Florida limited liability company with its principal place of business at 3300 Southwest 14th Place, Boynton Beach, FL 33426.  As relevant here, Milestone Motorcars Sales is engaged in the business of purchasing and selling and restoring vintage cars.  Plaintiff is informed and believes that Milestone Motorcars Sales and all of its members, and any and all of the partners or members of any and all partners or members thereof, are citizens of the United States and reside in the state of Florida.

21.     Defendant Richard Cole is an individual citizen of the United States and resides in the state of Texas.  Defendant Cole is in the business of purchasing and selling vintage cars.  On information and belief, he is the founder and owner of Defendant Rick Cole Auctions Incorporated.

22.     Defendant Rick Cole Auctions Incorporated is a Texas corporation with its principal place of business at 49 Briar Hollow Lane, Unit 1103, Houston TX 77027.  As relevant here, Rick Cole Auctions Incorporated is engaged in the business of auctioning, purchasing, and selling vintage cars.  Plaintiff is informed and believes that Rick Cole Auctions Incorporated and all of its members, and any and all of the partners or members of any and all partners or members thereof, are citizens of the United States and reside in the state of Texas.

23.     Defendant Donald E. Williams is an individual citizen of the United States and resides in the state of California.  Defendant Williams is in the business of purchasing and selling vintage cars.  On information and belief, he is the founder and owner of Defendant The Blackhawk Collection.

7

24.     Defendant The Blackhawk Collection is a California corporation with its principal place of business at 1092 Eagle Next Place, Danville, CA 94506.  As relevant here, The Blackhawk Collection is engaged in the business of auctioning, purchasing, and selling vintage cars.  Plaintiff is informed and believes that The Blackhawk Collection and all of its members, and any and all of the partners or members of any and all partners or members thereof, are citizens of the United States and reside in the state of California.

25.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1-100, inclusive, are unknown at the present time and Plaintiff therefore sues said DOES and each of them by such fictitious names.  If necessary, Plaintiff will seek leave of court to amend this Complaint to allege their true names and capacities when they are ascertained.

26.     Unless otherwise indicated herein, on information and belief, each of DOES 1-100, inclusive, participated in the activities described herein and rendered material assistance to the other Defendants in the actions alleged herein, conspired and agreed with and aided and abetted one or more of the other Defendants and at all relevant times each of the Defendants was the principal or agent, partner, independent contractor, loan-out company, servant and/or employee of at least one other of the other Defendants and all of the acts performed by them or omissions alleged herein were made in the course and scope of their employment, agency, partnership or other such relationship and with knowledge, consent, approval and/or ratification of the principals and each of them.  Unless otherwise indicated herein, each of the parties herein named as DOES 1-100 is responsible in some manner or fashion and is liable and responsible on the facts alleged herein for all the relief sought.

## GENERAL ALLEGATIONS

27.     Bradley Birkenfeld was the owner of a 1935 Bugatti Type 57 automobile, VIN #57322 (*viz.*, the Bugatti).  Mr. Birkenfeld purchased the Bugatti in 2015 and had the car completely restored by a local vintage car specialist in New Hampshire.

28.     On or about May 2, 2021, Mr. Birkenfeld was approached by Toby Ross of Ross Classic—an antique/vintage car dealer in Malta, with whom Mr. Birkenfeld had previously had dealings—regarding the possibility of purchasing a certain vintage Ferrari that he had found in Italy.  Mr. Birkenfeld expressed a general interest in purchasing a vintage Ferrari, and invited further information from Mr. Ross regarding various Ferrari model types and other specific vehicles in addition to the Ferrari that Mr. Ross had located in Italy.

29.     Later, Mr. Birkenfeld also expressed to Mr. Ross an interest in potentially selling his vintage Bugatti, which was located in New Hampshire, in addition to purchasing a vintage Ferrari.

30.     Mr. Ross then personally introduced Mr. Birkenfeld to another vintage car dealer in Boynton Beach, Florida—Defendant Thomas E. "Ted" Johnson of Milestone Motorcars—to assist and coordinate on both of the contemplated transactions.

31.     Mr. Ross, with Mr. Johnson's assistance, went on to send Mr. Birkenfeld information regarding several different vintage Ferrari models that met Mr. Birkenfeld's criteria, along with estimated price ranges for each model.

32.     One of the models presented to Mr. Birkenfeld for consideration was the 365 GTB/4 Ferrari Daytona, model year 1968 to 1973, for which Mr. Ross noted an estimated price range of "500/650," *i.e.*, $500,000-$650,000.  Mr. Birkenfeld expressed interest in acquiring a Ferrari Daytona of this model.

33.     Because Mr. Ross represented that a Ferrari Daytona of this model would cost between $500,000 and $650,000, Mr. Birkenfeld expected that the purchase of a Ferrari of this model would be significantly cheaper than the price he would receive for his Bugatti (in which he had already invested approximately $650,000 in repairs and restoration), and Mr. Birkenfeld at all times understood and expected that he would be paid the difference between the actual purchase prices of the two vehicles.

34.     On June 29, 2021, Mr. Johnson sent Mr. Birkenfeld (via Mr. Ross) a draft of his "standard consignment agreement" for the sale of the Bugatti (which did not yet have the car information filled out).

35.     In the same June 29 email, Mr. Johnson sent Mr. Birkenfeld information regarding a certain 1972 Ferrari Daytona, VIN #15299—namely, the Platinum Ferrari—which Mr. Ross described as "perfect," and which had won the prestigious "Platinum" rating by the Ferrari Club of America.  Mr. Birkenfeld was impressed with the car and asked Mr. Johnson to move forward with negotiations to procure the Platinum Ferrari.

36.     On or about July 16, 2021, Mr. Birkenfeld and the Johnson Defendants finalized and executed their written agreement regarding the sale of the Bugatti in a document titled "Automobile Consignment Sales Agreement" (the "Agreement").  Attached hereto as **Exhibit A** is a true and correct copy of the Agreement.

37.     This Agreement was drafted in its entirety by the Johnson Defendants (save one handwritten change made by Mr. Birkenfeld), and Mr. Johnson represented that it was his "standard consignment agreement."  Although Defendant Johnson is not listed as a party to the Agreement, he executed the Agreement for Defendants Milestone Motorcars and Milestone Motorcars Sales and, on information and belief, Defendant Johnson was at all relevant times acting as the agent or alter ego of Defendants Milestone Motorcars and Milestone Motorcars Sales.

38.     Pursuant to the Agreement, the Johnson Defendants expressly agreed to serve as "Agent" for Mr. Birkenfeld (whom the Agreement refers to as the "Principal") in connection with the sale of the Bugatti.

39.     Pursuant to the Agreement, the Johnson Defendants also agreed, *inter alia*, to undertake to secure on behalf of Mr. Birkenfeld the best possible "gross selling price" for the Bugatti.  The Johnson Defendants further promised to "promptly notify Principal [Mr. Birkenfeld] of any offer made for the purchase of the vehicle."

10

40.     After executing the Agreement, Mr. Birkenfeld prepared the Bugatti for transportation and eventual sale.  Mr. Johnson arranged to have the Bugatti transported from New Hampshire to Florida, where the Johnson Defendants were based.  Mr. Birkenfeld communicated via email and text messages with the Johnson Defendants—both personally and through others working on his behalf, including Kevin Callahan, who was based in New Hampshire, and Dr. Florian Lechner, the managing director of Plaintiff, who was based in Munich, Germany—in order to ensure that the Bugatti arrived safely to its destination.

41.     In furtherance of the eventual sale, Mr. Birkenfeld applied to have the title on the Bugatti corrected and reissued in New Hampshire, due to a technical defect in the originally issued title.  The Johnson Defendants were not only apprised of the application, they actively monitored its status at all times (via Mr. Callahan), and they understood that the reissued title was intended to be used for the eventual sale of the Bugatti.  The Bugatti title was in fact corrected and reissued on or about September 15, 2021.

42.     Meanwhile, however—completely unbeknownst to Mr. Birkenfeld—on or about August 18, 2021, Plaintiff is informed and believes that the Johnson Defendants had already sold the Bugatti to an antique car dealer in Danville, California—namely, Defendant Blackhawk Collection owned and operated by Defendant Don Williams (*viz.*, the Williams Defendants).

43.     However, the Johnson Defendants failed to either seek or receive Mr. Birkenfeld's authorization to proceed with this transaction.  Indeed, the Johnson Defendants did not even inform Mr. Birkenfeld of the sale until October 19, 2021—two months later.

44.     Meanwhile, the Johnson Defendants also represented that they were moving forward with attempts to negotiate and procure the Platinum Ferrari for Mr. Birkenfeld.  By early September, the Johnson Defendants represented that they were making good progress on purchasing the Platinum Ferrari and Mr. Birkenfeld and Dr. Lechner began making preparations to have the car shipped to Germany after the purchase was completed.

11

45.     Nevertheless, completely unbeknownst to Mr. Birkenfeld, on or about August 30, 2021, Plaintiff is informed and believes that the Johnson Defendants had already purchased a completely different Ferrari—the 1973 Ferrari Daytona, VIN #16907, which belonged personally to Mr. Cole (*viz.*, the Cole Ferrari)—from the Cole Defendants, purportedly on Mr. Birkenfeld's behalf.

46.     However, the Johnson Defendants again failed to either seek or receive Mr. Birkenfeld's authorization to proceed with this transaction.  Indeed, the Johnson Defendants never even presented the Cole Ferrari to Mr. Birkenfeld as a purchase option before completing the transaction.

47.     In fact, the Johnson Defendants did not even inform Mr. Birkenfeld or Plaintiff of the purchase until October 19, 2021—nearly two (2) months later.  And even then, the Johnson Defendants did not inform Mr. Birkenfeld that the car that they had allegedly purchased on his behalf was not the car that he had authorized them to attempt to procure (namely, the Platinum Ferrari).

48.     Specifically, on October 19, 2021, Mr. Ross emailed Dr. Lechner (copying Mr. Johnson, but without copying Mr. Birkenfeld) abruptly informing him that the transactions had been completed ("[t]he Bugatti is sold and the Ferrari purchased"), but not informing him of the sale price of either transaction, and not informing him that the "Ferrari" that had been purchased was not the Platinum Ferrari that Mr. Birkenfeld had authorized them to attempt to procure.  Mr. Ross also asked where and to whom he should send his commission invoice for the two transactions.

49.     After receiving Dr. Lechner's instructions regarding the invoice, Mr. Ross emailed Dr. Lechner an invoice directed to Plaintiff  for €43,000 for "Commission for the negotiation of the sale of Bugatti T57 and purchase of Ferrari Daytona"—which, notably, still did not state the sales price of either vehicle, or the year and VIN information for the Ferrari

Daytona.  Attached hereto as **Exhibit F** is a true and correct copy of the October 20, 2021 Ross Classic invoice to RMG, as sent to Dr. Lechner by Mr. Ross.

50.     After being informed by Mr. Ross that the two (2) transactions had already been completed, Dr. Lechner was taken aback, as neither Plaintiff nor Mr. Birkenfeld had been informed of or authorized the transactions before they were completed, nor were they even apprised of the purchase price of either transaction (and, thus, certainly did not approve the purchase price of either transaction).

51.     Shortly thereafter, Dr. Lechner arranged a phone call with Mr. Ross, which occurred on or about October 27, 2021.  On this call, Mr. Ross stated for the first time that the sale price of the Bugatti was $750,000 and the purchase price of the Ferrari was also $750,000.  Dr. Lechner thought it strange that the Bugatti was allegedly sold for the exact same price as the Ferrari was purchased for.  Accordingly, he asked Mr. Ross to send him the invoices for both transactions.  Mr. Ross stated that he did not have the invoices, but Mr. Johnson could send them.  Mr. Ross never mentioned on this call that the "Ferrari" that had been purchased was not the Platinum Ferrari that Mr. Birkenfeld had authorized the Johnson Defendants to pursue, but a completely different vehicle.

52.     Dr. Lechner then arranged a phone call with Mr. Johnson, which occurred on or about October 28, 2021.  On that call, Mr. Johnson confirmed that the sale price of the Bugatti and the purchase price of the Ferrari were both $750,000.  Dr. Lechner asked him to send the invoices reflecting the transactions.  Mr. Johnson agreed to do so.  Mr. Johnson still did not inform Dr. Lechner that the "Ferrari" that had been purchased was not the Platinum Ferrari that Mr. Birkenfeld had authorized the Johnson Defendants to pursue, but a completely different vehicle.

53.     Finally, on November 1, 2021, Mr. Johnson emailed Dr. Lechner (but without copying Mr. Birkenfeld) purported invoices for both transactions along, for the first time, with

photos of the Cole Ferrari and a purported "fresh" title for the Cole Ferrari (which, oddly, is registered to an Arizona dealer that Plaintiff had never heard of before).

54.     The first invoice was a purported invoice for the sale of the Bugatti, indicating that the Bugatti was sold to the Williams Defendants on August 18, 2021 at a purchase price of $750,000.  Attached hereto as **Exhibit B** is a true and correct copy of the August 18, 2021 Bugatti invoice from the Johnson Defendants to the Williams Defendants, as sent to Dr. Lechner by Mr. Johnson on November 1, 2021.  Notably, the invoice has two discrepant VINs listed for the Bugatti (*viz.*, "57522" and "57322").

55.     The second invoice was a purported invoice for the purchase of the Cole Ferrari from Rick Cole Auctions.  The invoice sent by Mr. Johnson was dated September 30, 2021, and the "Total Sale Price" of the Ferrari was listed as "$750,000."  Attached hereto as **Exhibit C** is a true and correct copy of the invoice dated September 30, 2021 (the "Forged Invoice"), as sent to Dr. Lechner by Mr. Johnson on November 1, 2021.  This invoice—which Mr. Johnson represented was from the Cole Defendants—was apparently inadvertently electronically labeled by Mr. Johnson as "Milestone Motorcars 16907 invoice 2."  In addition, although the invoice purports to be from "Rick Cole Auctions," Mr. Johnson later revealed that the vehicle was not owned by Rick Cole Auctions, but was a personal vehicle owned by Rick Cole.

56.     Also on November 1, 2021, Mr. Johnson emailed Dr. Lechner an invoice billing Plaintiff for $50,000 in commission on the two (2) transactions, stated as: $25,000 for "Commision [sic.] due for sale of 1935 Bugatti Type 57 #57322" and $25,000 for "Commision [sic.] due for purchase of 1971 Ferrari Daytona #16907."  Attached hereto as **Exhibit G** is a true and correct copy of the invoice to RMG dated November 1, 2021, as sent to Dr. Lechner by Mr. Johnson.  Although the invoice lists the correct VIN number for the Cole Ferrari, it incorrectly describes the car as a "1971" model, when the Cole Ferrari is in fact a 1973 model.

57.     The Johnson Defendants' representations regarding both the sale of the Bugatti and the purchase of the Cole Ferrari were false and fraudulent.

14

58.     Upon investigation, Dr. Lechner discovered that the actual purchase price of the Cole Ferrari was $575,000, pursuant to the true invoice obtained independently and directly from the Cole Defendants.  Attached hereto as **Exhibit D** is a true and correct copy of the true invoice for the purchase of the Cole Ferrari, as sent to Dr. Lechner by Mr. Cole on November 10, 2021. The true invoice is dated August 30, 2021—not September 30, 2021 (the date on the Fraudulent Invoice)—and lists the "Total Sale Price" as "$575,000"—not $750,000 (the purchase price on the Fraudulent Invoice).

59.     The Fraudulent Invoice sent to Dr. Lechner by Mr. Johnson on November 1, 2021 (**Exhibit C**) appears on its face to be a doctored and falsified version of the original invoice (**Exhibit D**).

60.     Upon further investigation, Dr. Lechner also discovered that the actual sale price of the Bugatti appeared to be far higher than the Johnson Defendants had represented. According to an invoice obtained independently by Dr. Lechner from the Williams Defendants (who purchased the Bugatti), the Bugatti was re-sold by the Williams Defendants to another purchaser at a purchase price of $1.5 million on August 19, 2021—just one day after the date on which the Johnson Defendants represented to Plaintiff that they sold the Bugatti to Blackhawk for half that amount: $750,000.  Attached hereto as **Exhibit E** is a true and correct copy of the invoice for the subsequent sale of the Bugatti (with the VIN and purchaser information redacted by Blackhawk), as sent via email to Dr. Lechner by Brian Murphy of Blackhawk on or about November 11, 2021.

61.     In subsequent communications with counsel for the Williams Defendants, the Williams Defendants denied that the invoice sent to Dr. Lechner by Mr. Murphy was the actual Bugatti invoice.  However, the Williams Defendants refused to disclose either the purchaser or the actual sale price of the Bugatti, and refused to send even a redacted copy of the purported invoice reflecting the sale.

15

62.     Based on the foregoing facts, either the Johnson Defendants knowingly and wilfully misrepresented the true sale price of the Bugatti—as they knowingly and wilfully misrepresented the purchase price of the Cole Ferrari—or they utterly abandoned their contractual fiduciary duties to Mr. Birkenfeld, including their duty as Birkenfeld's agent to maximize the price he obtained for the sale of the Bugatti, as the Bugatti was clearly worth far more than $750,000, having been re-sold the next day for twice that price.  The Johnson Defendants also defrauded Plaintiff and Mr. Birkenfeld by failing to disclose the fact that the Cole Ferrari they purchased was not the Platinum Ferrari that Mr. Birkenfeld instructed them to pursue.  The Johnson Defendants also misappropriated funds belonging to Mr. Birkenfeld by failing and refusing to pay him the difference between the actual purchase price of the Cole Ferrari and the sale price of the Bugatti.

63.     In addition, the Johnson Defendants knowingly and willfully breached their duties—both contractual and fiduciary —to keep Mr. Birkenfeld apprised of their negotiations, to inform him of any offers, and to seek his approval of any sale.  Not only did the Johnson Defendants never seek Mr. Birkenfeld's approval for either of these transactions, the Johnson Defendants never even informed Plaintiff or Mr. Birkenfeld of either of the transactions until October 19, 2021.

64.     Notably, Mr. Birkenfeld never signed, nor was he asked to sign, the title transferring the Bugatti to the new owner.  Nor did the Johnson Defendants ever obtain power of attorney from Mr. Birkenfeld to legally execute title on Mr. Birkenfeld's behalf, and no power of attorney is included in the Agreement.

65.     Plaintiff is informed and believes (based on a January 10, 2022 telephone call between Mr. Johnson and counsel for both sides) that instead of getting Mr. Birkenfeld's authorization to sell the Bugatti, the Johnson Defendants sold the Bugatti under a purported "bill of sale" as a dealer-to-dealer transaction.  This procedure allowed Mr. Johnson to allegedly sell

the vehicle without using the Bugatti title (which Mr. Birkenfeld would have had to have signed)—and without even informing Mr. Birkenfeld of the purported sale.

66.     However, the Johnson Defendants never owned the Bugatti, and it was never sold or transferred to them, nor did they obtain power of attorney to transfer the car on Mr. Birkenfeld's behalf.  The Bugatti was owned not by a dealer, but by Mr. Birkenfeld and, thus, Mr. Birkenfeld's authorization—which was never even requested or obtained—was required to legally transfer any right or title in Mr. Birkenfeld's vehicle, the Bugatti.  Accordingly, any purported sale of the Bugatti via a dealer-to-dealer transaction was fraudulent and void.

67.     Having purported to transfer and sell the Bugatti to the Williams Defendants without Mr. Birkenfeld's authorization, the vehicle was stolen, and any subsequent claim to ownership or transfer of the Bugatti after this fraudulent sale is invalid and void.  On information and belief, the Williams Defendants were aware of these facts and nonetheless knowingly facilitated and perpetuated the fraudulent transaction, as well as engaged in a subsequent fraudulent transfer of the Bugatti.

68.     In addition to the foregoing, the Johnson Defendants claimed after-the-fact that there were certain "mechanical issues" with the Bugatti that required repair, and purported to invoice Plaintiff $9,850.00 for those repairs.  However, the Milestone Defendants never informed Mr. Birkenfeld or obtained his permission before making these putative repairs.  Moreover, the Johnson Defendants expressly represented in the Agreement that the Bugatti had "No Mechanical Issues" and "No Cosmetic Issues."

69.     The Johnson Defendants' attempt to charge Plaintiff for these unauthorized putative repairs was in violation of Paragraph 7 of the Agreement, which requires the Johnson Defendants to "consult with the Principal [Mr. Birkenfeld] before incurring any repair costs in excess of $500."  Moreover, the Johnson Defendants' charging of Plaintiff for these repairs was fraudulent and contrary to the Johnson Defendants' express representations in the Agreement that the Bugatti had "No Mechanical Issues" and "No Cosmetic Issues."

70.     On November 11, 2021, after Dr. Lechner pressed Mr. Johnson about the details of the two transactions and his invoice therefor, Mr. Johnson made, *inter alia*, the following further false or misleading representations in an email to Mr. Birkenfeld and Dr. Lechner:

    a.   that the "total value of the transaction" (for purposes of calculating the Johnson Defendants' commission) was $1,500,000, comprising "two legs" of $750,000 each;

    b.   that the only funds the Johnson Defendants received in connection with either the sale of the Bugatti or the purchase of the Cole Ferrari was a "small commission" on the Cole Ferrari (*viz.*, allegedly $7,500 paid to him by Rick Cole Auctions, as separately represented by Mr. Johnson to Dr. Lechner);

    c.   that the Johnson Defendants "negotiated a much lower price for the [Cole Ferrari] than the owner originally wanted" (*viz.*, allegedly $800,000, as separately represented to Dr. Lechner) and that the "lower price" was in fact $750,000;

    d.   that because the Johnson Defendants had not received any other monies in connection with the two transactions, the Johnson Defendants were "reliant on the commission coming from [Plaintiff] for the income" they would receive on these transactions.

Attached hereto as **Exhibit F** is a true and correct copy of Mr. Johnson's email of November 11, 2021.

71.     Thus, while falsely representing that the Johnson Defendants were "reliant on the commission coming from" Plaintiff for their compensation on the two transactions, the Johnson Defendants misrepresented the sales price of both of the transactions and misappropriated the remainder of the funds as a windfall for themselves.

72.     After learning of these matters, Plaintiff sent a demand letter, via legal counsel, to the Johnson Defendants on November 22, 2021, insisting, *inter alia*, that the Johnson Defendants

pay Plaintiff the full actual sales price of the Bugatti, and that the Johnson Defendants rescind the fraudulent sale of the Cole Ferrari.

73.     The Johnson Defendants replied, via a letter from their counsel, George Kramer, dated December 16, 2021.  Attached hereto as **Exhibit G** is a true and correct copy of Mr. Kramer's letter.  Notwithstanding the terms of their Agreement, the Johnson Defendants asserted in their letter that their arrangement with Mr. Birkenfeld was to simply "swap" the two cars, regardless of the actual sale prices of the two separate transactions, and that the Johnson Defendants were entitled to keep and retain any windfall from the transactions for their own benefit.

74.     The Johnson Defendants also admitted that the actual sale price of the Cole Ferrari was $575,000—and thus that the Forged Invoice they had sent to Dr. Lechner was indeed forged.  However, they claimed that the difference between the actual price and that represented on the Forged Invoice was made up by the exchange of "other consideration" on  the transaction, which they declined to further explain.

75.     At no time prior to the Johnson Defendants' December 16, 2021 letter from counsel were Plaintiff or Mr. Birkenfeld ever informed that "other consideration" over and above the purchase price of the Cole Ferrari was exchanged as part of the Cole Ferrari transaction.

76.     On or about January 10, 2022, at the Johnson Defendants' counsel's request, Plaintiff's counsel, the Johnson Defendants' counsel, and Mr. Johnson had a joint telephone call wherein Mr. Johnson repeatedly contradicted his own prior written statements.  As but one example, Mr. Johnson claimed that the $50,000 commission for which he had invoiced Plaintiff was solely for Mr. Ross, and that none of it was for himself, despite previously practically begging Plaintiff in his November 11, 2021 email to pay him a $50,000 commission, as he was allegedly reliant on the commission for his "income" from the transactions.

77.     On the same phone call, Mr. Johnson stated (after initially refusing to respond) that the "other consideration" referenced in his counsel's letter referred to two items: (1) the

19

forgiveness of a prior debt owed *by* the Johnson Defendants *to* the Cole Defendants and (2) monetary considerations on another separate transaction between them.

78.     At no time prior to the January 10, 2022 phone call were Plaintiff or Mr. Birkenfeld ever informed that prior debts between the parties were being forgiven as part of the purchase of the Cole Ferrari, nor were they ever previously informed that monetary consideration on the Cole Ferrari transaction was being mixed with monetary consideration on another transaction.

79.     After the call, Plaintiff later discovered that the Bugatti was posted on the Cole Defendants' Instagram account on October 19, 2021 as having been sold by the Cole Defendants—despite the fact that the same Bugatti was also posted on the Williams Defendants' Instagram account on October 6, 2021 as having been sold by the Williams Defendants.

80.     Prior to this discovery, Plaintiff had no knowledge or awareness whatsoever that the Cole Defendants were involved in any way in transactions related to the Bugatti.  On information and belief, the additional transaction referenced as "other consideration" for the Cole Ferrari purchase by Mr. Johnson on the January 10, 2022 phone call was an undisclosed transaction involving the Bugatti between the Johnson Defendants and the Cole Defendants of which Plaintiff was wholly unaware.

81.     It was only through subsequent investigation that Plaintiff discovered that the Cole Ferrari purchased by the Johnson Defendants was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure—and had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole.

82.     Based on the foregoing facts, Plaintiff is informed and believes that all Defendants have engaged in a coordinated scheme to defraud Plaintiff through a series of hidden, undisclosed transactions from which Defendants appropriated to themselves consideration and property that was rightfully Plaintiff's.  Plaintiff was accordingly forced to initiate the instant lawsuit.

## COUNT 1

### (Fraud)

### Against the Johnson Defendants

83.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 82 as if fully set forth herein.

84.    The Johnson Defendants engaged in a scheme to defraud Plaintiff in connection with the sale of the Bugatti and the purchase of the Cole Ferrari, which scheme involved numerous affirmative material misrepresentations, as well as omissions of material facts and information.  Specifically, the Johnson Defendants fraudulently engaged in and consummated both the sale of the Bugatti and the purchase of the Cole Ferrari wholly without Plaintiff's or Mr. Birkenfeld's authorization, despite allegedly undertaking both transactions on Mr. Birkenfeld's behalf.  With respect to the Bugatti, on information and belief, the Johnson Defendants sold the Bugatti by fraudulent means—purporting to sell the car under a "bill of sale" as a dealer-to-dealer transaction, instead of transferring title to the car (which would have required Mr. Birkenfeld's signature), despite the fact that the car was not owned by the Johnson Defendants, nor had they obtained power of attorney to effectuate the transactions.  The Johnson Defendants further did not disclose either of the transactions, or the purchase prices thereof, to Plaintiff or Mr. Birkenfeld until approximately two (2) months after they occurred.  During this time, Plaintiff is informed and believes that the Johnson Defendants, the Williams Defendants and the Cole Defendants engaged in further undisclosed, fraudulent and self-dealing transactions involving the Bugatti and the Cole Ferrari, and possibly other vehicles, in order to appropriate to themselves proceeds from the sales that lawfully belonged to Plaintiff/Mr. Birkenfeld.  The Johnson Defendants also fraudulently and surreptitiously stole and converted the Bugatti and, on information and belief, transported it across state lines for purposes of engaging in further fraudulent transactions.

85.     In addition, the Johnson Defendants falsely represented the purchase and sale prices of the two vehicles to Plaintiff, and, in furtherance thereof, forged at least one invoice (*viz.*, the Forged Invoice for the Cole Ferrari).  In October 2021, The Johnson Defendants represented to Plaintiff that they had sold the Bugatti for $750,000 and purchased the Cole Ferrari for $750,000 and that the "total value of the transaction" was thus $1.5 million.  Based on the facts stated above, the Johnson Defendants misrepresented the purchase and sale prices of both transactions and/or omitted to disclose further transactions on the same vehicles from which they benefitted.  Furthermore, on November 1, 2021, the Johnson Defendants sent Dr. Lechner, managing director of Plaintiff, an invoice representing that the Cole Ferrari had been purchased for $750,000.  In an email dated November 11, 2021, the Johnson Defendants further represented that the seller of the Cole Ferrari had wanted a higher price, but that they had negotiated the seller down to a lower purchase price of $750,000—purportedly for Plaintiff's/Birkenfeld's benefit.  In that same email, the Johnson Defendants further falsely represented that they had received no monies in connection with the two transactions (apart from a "small" $7,500 commission on the Cole Ferrari), other than the commission to be paid by Plaintiff.  The true purchase price of the Cole Ferrari was not $750,000, but $575,000, and the invoice sent by the Johnson Defendants was forged.  The true sale price of the Bugatti was not $750,000, but $1.5 million.

86.     The Johnson Defendants also failed to inform Plaintiff/Birkenfeld of material facts concerning the Cole Ferrari transaction.  Specifically, the Johnson Defendants failed to inform Plaintiff/Birkenfeld that "other consideration" was exchanged in connection with the purchase of the Cole Ferrari, including (a) the forgiveness of a separate debt between the Johnson Defendants and the Cole Defendants, and (b) credits applied in connection with another separate transaction.  Plaintiff is also informed and believes that the Johnson Defendants engaged in and benefited from other further transactions involving the Bugatti and the Cole Ferrari that were not disclosed to Plaintiff/Birkenfeld.  The Johnson Defendants also materially misled

Plaintiff by failing to disclose that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure—and had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole.

87.     The aforesaid representations were materially false and, on information and belief, Defendants knew them to be false at the time the representations were made.  The aforesaid omissions concerned material facts and, on information, through such omissions, Defendants intended to withhold material information from Plaintiff.

88.     The Johnson Defendants intended Plaintiff to rely on the aforesaid representations and/or omissions.  Specifically, Defendants' representations and/or omissions were intended to induce Plaintiff into paying the Johnson Defendants a commission, and to expect no further payment from the sales, thus allowing the Johnson Defendants to retain a windfall from the sales themselves.

89.     Plaintiff did reasonably rely on the Johnson Defendants' false representations, and/or material omissions including by failing to demand payment of the additional proceeds from the sale of the Bugatti, and in failing to demand payment of the difference between the purchase price of the Bugatti and that of the Cole Ferrari—which is precisely the effect that the Johnson Defendants' misrepresentations and material omissions were intended to have, so that they could retain the difference as a windfall for themselves and their co-conspirators.  Plaintiff was harmed as a result of its reliance on the Johnson Defendants' false representations and/or omissions, and the Johnson Defendants' false representations and/or omissions were a substantial factor in causing Plaintiff's harm.

90.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of

the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

91.     Because the acts and omissions of the Johnson Defendants complained of herein were grossly negligent and/or intentional, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined at trial.

## COUNT 2

### (Breach of Contract)

### Against the Johnson Defendants

92.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 91 as if fully set forth herein.

93.     Mr. Birkenfeld and the Johnson Defendants entered into a valid and binding written agreement, *viz.*, the Agreement.  Mr. Birkenfeld subsequently transferred all right and interest in the Cole Ferrari and Bugatti, including claims related thereto and to the Agreement, to Plaintiff.

94.     Pursuant to the Agreement, the Johnson Defendants were to act as Mr. Birkenfeld's "agent" and secure on his behalf a "gross selling price" for the Bugatti.  The Johnson Defendants were to "promptly notify [Plaintiff] of any offer made for the purchase of the [Bugatti]."  Further, the Johnson Defendants agreed that the Bugatti had no mechanical nor cosmetic issues, and were to seek Mr. Birkenfeld's permission before incurring repair costs in excess of $500.

95.     The Johnson Defendants materially breached their obligations under the Agreement by, *inter alia*, (i) failing to notify Mr. Birkenfeld of the $1.5 million offer for the Bugatti and (ii) failing to consult with Mr. Birkenfeld prior to allegedly having incurred $9,850 in repairs.

96.     Plaintiff was injured as a result of the Johnson Defendants' material breaches of their contractual duties alleged herein.

97.     Plaintiff and/or Mr. Birkenfeld did all, or substantially all, of the essential things that the Agreement required, except insofar as those obligations have been waived by the Johnson Defendants or excused by the Johnson Defendants' failure to perform under the agreement.

98.     All conditions required by the Agreement for the Johnson Defendants' performance had occurred.

99.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

100.    Because the acts and omissions of the Johnson Defendants complained of herein were grossly negligent and/or intentional, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined at trial.

## COUNT 3

### (Breach of Fiduciary Duty)

### Against the Johnson Defendants

101.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 100 as if fully set forth herein.

102.    The Johnson Defendants, as agents of Mr. Birkenfeld for purposes of the sale of the Bugatti and the purchase of the Cole Ferrari, at all relevant times owed a fiduciary duty to Mr. Birkenfeld.  Mr. Birkenfeld later assigned all his right and interest in any claims relating to the sale of the Bugatti and the purchase of the Cole Ferrari, including any claims for breach of fiduciary duty, to Plaintiff.

25

103.    The Johnson Defendants' conduct described herein breached their fiduciary duties to Plaintiff.  The Johnson Defendants' tortious and wrongful conduct complained of herein includes, without limitation, (i) the Johnson Defendants' misrepresentation of both the purchase price of the Cole Ferrari and the sale price of the Bugatti—and, indeed, their delivery to Plaintiff of the Forged Invoice in furtherance of those misrepresentations—so that the Johnson Defendants and their co-conspirators could themselves pocket the difference, (ii) the Johnson Defendants' failure to obtain the authorization of Mr. Birkenfeld for the transactions at issue and their conversion of the Bugatti through the purported sale thereof under a fraudulent "bill of sale," and (iii) the Johnson Defendants' failure to disclose that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure, but had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole.

104.    Plaintiff was injured as a result of the Johnson Defendants' breach of their fiduciary duties alleged herein, and the Johnson Defendants' breach of fiduciary duties was a substantial factor causing Plaintiff's harm.

105.    As a direct, proximate, and foreseeable result of the conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

106.    Because the acts and omissions of the Johnson Defendants complained of herein were malicious, oppressive, and/or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined at trial.

**COUNT 4**

**(Aiding and Abetting Breach of Fiduciary Duty)**

**Against the Williams Defendants and the Cole Defendants**

107.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 106 as if fully set forth herein.

108.    The Johnson Defendants, as agents of Mr. Birkenfeld for purposes of the sale of the Bugatti and the purchase of the Cole Ferrari, at all relevant times owed a fiduciary duty to Mr. Birkenfeld.  Mr. Birkenfeld later assigned all his right and interest in any claims relating to the sale of the Bugatti and the purchase of the Cole Ferrari, including any claims for breach of fiduciary duty, to Plaintiff.

109.    The Cole Defendants and the Williams Defendants at all relevant times knew that the Johnson Defendants owed a fiduciary duty to Mr. Birkenfeld/Plaintiff.

110.    Despite their knowledge of the Johnson Defendants' fiduciary duties to Birkenfeld/Plaintiff, the Cole Defendants induced and caused the Johnson Defendants to breach their fiduciary duties to Plaintiff/Birkenfeld by, on information and belief, mixing consideration between the sale of the Cole Ferrari and the purchase of the Bugatti.  The Cole Defendants also accepted the Bugatti from the Johnson Defendants without proper title and sold the Bugatti on to a subsequent buyer.  The Cole Defendants did so with the intent to cause the Johnson Defendants to breach their fiduciary duties.

111.    Despite their knowledge of the Johnson Defendants' fiduciary duties to Birkenfeld/Plaintiff, the Williams Defendants induced and caused the Johnson Defendants to breach their fiduciary duties to Plaintiff/Birkenfeld by, on information and belief, accepting the Bugatti from the Johnson Defendants without proper title and selling the Bugatti on to a subsequent buyer.  The Williams Defendants did so with the intent to cause the Johnson Defendants to breach their fiduciary duties.

112.     As a direct, proximate, and foreseeable result of the conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

113.     Because the acts and omissions of the Cole Defendants and the Williams Defendants complained of herein were malicious, oppressive, and/or in reckless disregard of Plaintiff's rights, Plaintiff is entitled to exemplary and punitive damages in an amount to be determined at trial.

## COUNT 5

**(Violation of Florida's Deceptive and Unfair Trade Practices Act,**

**Fla. Stat. § 501.201 *et seq.*)**

**Against the Johnson Defendants**

114.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 113 as if fully set forth herein.

115.     Section 501.204 of FDUTPA, Chapter 501, Part II, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce."

116.     The Johnson Defendants are and have been engaged in trade and commerce in the State of Florida.

117.     Plaintiff (and Mr. Birkenfeld, through whom Plaintiff has been assigned the claims at issue) are consumers under FDUTPA. *See* Fla. Stat. § 501.203(7).

118.     The Johnson Defendants engaged in a scheme to defraud Plaintiff in connection with the sale of the Bugatti and the purchase of the Cole Ferrari, which scheme involved

numerous affirmative material misrepresentations, as well as omissions of material facts and information.  Specifically, the Johnson Defendants fraudulently engaged in and consummated both the sale of the Bugatti and the purchase of the Cole Ferrari wholly without Plaintiff's or Mr. Birkenfeld's authorization, despite allegedly undertaking both transactions on Mr. Birkenfeld's behalf.  With respect to the Bugatti, on information and belief, the Johnson Defendants sold the Bugatti by fraudulent means—purporting to sell the car under a "bill of sale" as a dealer-to-dealer transaction, instead of transferring title to the car (which would have required Mr. Birkenfeld's signature), despite the fact that the car was not owned by the Johnson Defendants, nor had they obtained power of attorney to effectuate the transactions.  The Johnson Defendants further did not disclose either of the transactions, or the purchase prices thereof, to Plaintiff or Mr. Birkenfeld until approximately two (2) months after they occurred.  During this time, Plaintiff is informed and believes that the Johnson Defendants, the Williams Defendants and the Cole Defendants engaged in further undisclosed, fraudulent and self-dealing transactions involving the Bugatti and the Cole Ferrari, and possibly other vehicles, in order to appropriate to themselves proceeds from the sales that lawfully belonged to Plaintiff/Mr. Birkenfeld.  The Johnson Defendants also fraudulently and surreptitiously stole and converted the Bugatti and, on information and belief, transported it across state lines for purposes of engaging in further fraudulent transactions.

119.    In addition, the Johnson Defendants falsely represented the purchase and sale prices of the two vehicles to Plaintiff, and, in furtherance thereof, forged at least one invoice (*viz.*, the Forged Invoice for the Cole Ferrari).  In October 2021, The Johnson Defendants represented to Plaintiff that they had sold the Bugatti for $750,000 and purchased the Cole Ferrari for $750,000 and that the "total value of the transaction" was thus $1.5 million.  Based on the facts stated above, the Johnson Defendants misrepresented the purchase and sale prices of both transactions and/or omitted to disclose further transactions on the same vehicles from which they benefitted.  Furthermore, on November 1, 2021, the Johnson Defendants sent Dr. Lechner,

managing director of Plaintiff, an invoice representing that the Cole Ferrari had been purchased for $750,000. In an email dated November 11, 2021, the Johnson Defendants further represented that the seller of the Cole Ferrari had wanted a higher price, but that they had negotiated the seller down to a lower purchase price of $750,000—purportedly for Plaintiff's/Birkenfeld's benefit. In that same email, the Johnson Defendants further falsely represented that they had received no monies in connection with the two transactions (apart from a "small" $7,500 commission on the Cole Ferrari), other than the commission to be paid by Plaintiff. The true purchase price of the Cole Ferrari was not $750,000, but $575,000, and the invoice sent by the Johnson Defendants was forged. Plaintiff is informed and believes that the true sale price of the Bugatti was not $750,000, but $1.5 million.

120.    The Johnson Defendants also failed to inform Plaintiff/Birkenfeld of material facts concerning the Cole Ferrari transactions. Specifically, the Johnson Defendants failed to inform Plaintiff/Birkenfeld that "other consideration" was exchanged in connection with the purchase of the Cole Ferrari, including (a) the forgiveness of a separate debt between the Johnson Defendants and the Cole Defendants, and (b) credits applied in connection with another separate transaction. Plaintiff is also informed and believes that the Johnson Defendants engaged in and benefited from other further transactions involving the Bugatti and the Cole Ferrari that were not disclosed to Plaintiff/Birkenfeld. The Johnson Defendants also materially misled Plaintiff by failing to disclose that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure—and had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole.

121.    The Johnson Defendants' representations and omissions as set forth above are false and misleading and likely to mislead consumers acting reasonably, and/or consumers within the State of Florida were misled by the Johnson Defendants' misrepresentations in violation of Section 501.204 of FDUTPA.

122.     As described above, the Johnson Defendants have engaged in deceptive and unfair acts and practices likely to deceive a consumer acting reasonably in violation of the provisions of Section 501.204 of FDUTPA.

123.     As a direct, proximate, and foreseeable result of the Johnson Defendants' above-described unfair and deceptive trade practices, Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

124.     By virtue of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages, together with attorneys' fees, costs of suit and interest, as well as injunctive relief, and any other relief the Court deems just and proper.

## COUNT 6

**(Violation of the Texas Deceptive Trade Practices Act,**

**Tex. Bus. & Com. Code §§ 17.41 *et seq.*)**

**Against the Cole Defendants**

125.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 124 as if fully set forth herein.

126.     The Texas DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Texas DTPA § 17.46 (a).

127.     Plaintiff is a consumer under the Texas DTPA. *See* Texas DTPA § 17.45(4).

128.     The Cole Defendants assisted and conspired with the Johnson Defendants in engaging in a series of transactions with Plaintiff which the Cole Defendants knew to be fraudulent.  As described above, the Johnson Defendants falsely represented the purchase and

sale prices of the two vehicles to Plaintiff, and, in furtherance thereof, forged at least one invoice purportedly sent by the Cole Defendants (*viz.*, the Forged Invoice for the Cole Ferrari). Furthermore, on November 1, 2021, the Johnson Defendants sent Dr. Lechner, managing director of Plaintiff, an invoice from the Cole Defendants representing that the Cole Ferrari had been purchased for $750,000.  In an email dated November 11, 2021, the Johnson Defendants further represented that the seller of the Cole Ferrari (*viz.*, the Cole Defendants) had wanted a higher price, but that they had negotiated the seller down to a lower purchase price of $750,000—purportedly for Plaintiff's/Birkenfeld's benefit.  Plaintiff is informed and believes that the true purchase price of the Cole Ferrari was not $750,000, but $575,000.  The Johnson Defendants also failed to inform Plaintiff/Birkenfeld of material facts concerning the Cole Ferrari transactions.  Specifically, the Johnson Defendants failed to inform Plaintiff/Birkenfeld that "other consideration" was exchanged in connection with the purchase of the Cole Ferrari, including (a) the forgiveness of a separate debt between the Johnson Defendants and the Cole Defendants, and (b) credits applied in connection with another separate transaction.  The Johnson Defendants also materially misled Plaintiff by failing to disclose that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure—and had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole.

129.    The foregoing fraudulent transactions, representations, and omissions were made with the material assistance and active participation of the Cole Defendants, each of whom had actual or constructive knowledge of the fraudulent nature of the transactions, representations and omissions at issue, and each of whom benefitted materially therefrom.

130.    As described above, the Cole Defendants have engaged in "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" as prohibited by the Texas DTPA. Texas DTPA § 17.46 (a).

131.    As a direct, proximate, and foreseeable result of the Cole Defendants' above-described false and deceptive trade practices, Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

132.    By virtue of the foregoing, Plaintiff is entitled to an award of compensatory damages, together with interest and costs, as well as injunctive relief, and any other relief the Court deems just and proper.

## COUNT 7

### (Civil Conspiracy)

### Against All Defendants

133.    Plaintiff repeats and realleges the allegations made in paragraphs 1 through 132 as if fully set forth herein.

134.    The Cole Defendants and the Williams Defendants together with Does 1 through 100, inclusive, conspired, colluded, agreed with, and aided and abetted the Johnson Defendants in their wrongful conduct described above and herein.  Through their actions in furtherance of the Johnson Defendants' purchase of the Cole Ferrari and sale of the Bugatti, the Cole Defendants, the Williams Defendants, and the Johnson Defendants implicitly and/or explicitly agreed to participate and did participate in an unlawful plan which included fraud upon Plaintiff, breach of fiduciary duty, and violations of unfair competition laws, as described above.

135.    Defendants' common scheme involved fraudulently engaging in and consummating both the sale of the Bugatti and the purchase of the Cole Ferrari wholly without Plaintiff's or Mr. Birkenfeld's authorization, despite allegedly undertaking both transactions on Mr. Birkenfeld's behalf.  Mr. Birkenfeld engaged the Johnson Defendants as his agent for

purposes of these transactions, and Mr. Birkenfeld subsequently transferred all right and interest in the Cole Ferrari and Bugatti, including claims related thereto, to Plaintiff.  With respect to the Bugatti, Plaintiff is informed and believes that the Johnson Defendants sold the Bugatti by fraudulent means—purporting to sell the car under a "bill of sale" as a dealer-to-dealer transaction, instead of transferring title to the car (which would have required Mr. Birkenfeld's signature), despite the fact that the car was not owned by the Johnson Defendants, nor had they obtained power of attorney to effectuate the transactions.  The Johnson Defendants further did not disclose either of the transactions, or the purchase prices thereof, to Plaintiff or Mr. Birkenfeld until approximately two (2) months after they occurred.  With respect to the Cole Ferrari, the Johnson Defendants also materially misled Plaintiff by failing to disclose that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized them to attempt to procure—and by failing to disclose that it had in fact been bought directly from the Johnson Defendants' long-time associate, Defendant Richard Cole. Not only did the Johnson Defendants fail to seek Plaintiff's or Mr. Birkenfeld's approval for the purchase of the Cole Ferrari and the sale of the Bugatti, but they proceeded to misrepresent the sales prices of the vehicles to Plaintiff and Mr. Birkenfeld so that they would not have to pay him the $925,000 netted from the two transactions.  The Johnson Defendants claimed that the Cole Ferrari had been purchased for $750,000 and that the Bugatti had been sold for $750,000—however, on information and belief, the true purchase price of the Cole Ferrari was $575,000 and the true sales price of the Bugatti was $1.5 million.  Moreover, these sales were effectuated through fraudulent and self-dealing transactions among the Johnson Defendants, the Cole Defendants, and the Williams Defendants, which were not disclosed to Plaintiff.  The Johnson Defendants failed to inform Plaintiff that the $750,000 alleged purchase price of the Cole Ferrari included "other consideration" such as the forgiveness of a separate debt between the Johnson Defendants and the Cole Defendants, and credits applied in connection with another separate transaction.

136.     The Cole Defendants and the Williams Defendants all willingly participated in this common scheme both before and after the illegal aspects of the scheme became apparent. Plaintiff is informed and believes that the Cole Defendants sold the Cole Ferrari to the Johnson Defendants and later sold the Bugatti, together with the Williams Defendants.  The Cole Defendants and Williams Defendants knew these transactions were unlawful because, *inter alia*, the Johnson Defendants were unable to produce valid title for the Bugatti and no power of attorney to transfer the Bugatti on behalf of Mr. Birkenfeld and had no authority to sell the vehicle.  Both the Cole Defendants and the Williams Defendants made claims to have sold the Bugatti in October 2021, *i.e.*, after possession of the Bugatti had been transferred to the Johnson Defendants.

137.     As a result of the foregoing, each of the Defendants is liable for the illegal acts (as alleged herein) of each of the other Defendants in furtherance of their common plan and scheme to defraud Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee).

138.     Plaintiff is accordingly entitled to compensatory, special and punitive damages, as well as attorneys' fees, costs of suit and interest, from all Defendants in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

## COUNT 8

**(Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962)**

**Against All Defendants**

139.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 138 as if fully set forth herein.

35

140.    Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and Plaintiff was injured as a result.

141.    Each of the Defendants is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

142.    Each of the Defendants violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

143.    The Johnson Defendants, the Cole Defendants, and the Williams Defendants together with other Defendants form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

144.    Alternatively, the Defendants each constitute a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

145.    Alternatively, the Defendants together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

146.    Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

147.    Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

148.    The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission.  Further, on information and belief, the acts of racketeering by Defendants have been continuous.  On information and belief, there was repeated conduct during a period of time lasting at least six (6) months, and there is a continued threat of repetition of such conduct.

149.    The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.

150.    Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

151.    Predicate Act: Use of Mails and Wires to Defraud Plaintiff in Violation of 18 U.S.C. §§ 1341 and 1343.  Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee) by means of false or fraudulent pretenses, representations or promises.  For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents and things by U.S. mails or by private or commercial interstate carriers, or received such therefrom.  Defendants also transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs and signals.  The acts of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen even if not actually intended.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

152.    Defendants carried out their scheme in different states and countries and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires.  In furtherance of the scheme alleged herein, Defendants communicated among themselves and with Plaintiff in furtherance of the scheme to defraud Mr. Birkenfeld (and thus

Plaintiff as Mr. Birkenfeld's assignee).  These communications were typically transmitted by wire (*i.e.*, electronically) and/or through the United States mails or private or commercial carriers.  Defendants also transmitted or caused to be transmitted falsified invoices for the transactions at issue—including the Fraudulent Invoice for the sale of the Cole Ferrari.  In furtherance of their scheme, Defendants used wire to induce Mr. Birkenfeld to execute the Agreement.  Moreover, Defendants made transmissions via wire to materially mislead Plaintiff by failing to disclose facts that they—as Plaintiff's agents—were under a duty to disclose, namely, that the Cole Ferrari that they purchased was not the Platinum Ferrari that Mr. Birkenfeld authorized the Johnson Defendants to attempt to procure—and had in fact been bought directly from the Johnson Defendants' and Williams Defendants' long-time associate, Defendant Richard Cole.

153.    Defendants' shared objective was and is to defraud Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee) and retain the profits from the sale of the Bugatti and the purchase of the Cole Ferrari for their own benefit.

154.    Plaintiff and Mr. Birkenfeld reasonably and justifiably relied upon Defendants' false representations, false pretenses and deceptive communications, and Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

155.    Predicate Act: Transport and Receipt of Stolen Money in Violation of 18 U.S.C. §§ 2314 and 2315.  Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2314 in that having devised or intended to devise a scheme or artifice to defraud Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee) or to obtain money from Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee) by means of false or fraudulent pretenses, representations or promises, Defendants transported or caused to be transported in interstate or foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud.  Specifically, while Defendants unlawfully converted the Bugatti by

selling it, to the extent that the Bugatti cannot be recovered, Defendants have wrongfully retained the proceeds from this sale. Defendants also committed acts constituting indictable offenses under 18 U.S.C. § 2315 in that they received money in excess of $5000, which crossed a State or United States boundary after being stolen, unlawfully converted, or taken. The acts of Defendants set forth above were done willfully and with knowledge that the money was stolen, converted or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice. As part of their scheme alleged herein, Defendants unlawfully retained funds from the sale of the Bugatti that belonged to Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee).

156.     Predicate Act: Transport and Receipt of Stolen Motor Vehicle in Violation of 18 U.S.C. §§ 2312 and 2313. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 2312 in that having devised or intended to devise a scheme or artifice to defraud Mr. Birkenfeld (and thus Plaintiff as Mr. Birkenfeld's assignee), Defendants transported or caused to be transported in interstate or foreign commerce a stolen motor vehicle knowing the same to be stolen. Defendants also committed acts constituting indictable offenses under 18 U.S.C. § 2313 in that they received, bartered, or sold a stolen motor vehicle that has crossed a State or United States boundary after being stolen knowing the same to have been stolen. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice. As part of their scheme alleged herein, Defendants unlawfully sold the Bugatti, which was a stolen motor vehicle in that Mr. Birkenfeld was the rightful owner of the Bugatti and Defendants lacked Mr. Birkenfeld's permission to enter into the transactions described above.

157.     Continuity of Conduct. Upon information and belief, Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff and other market participants, constituted a continuous course of conduct spanning a period of over six (6) months, which was intended to obtain money through false representations, fraud, deceit, and other improper and unlawful means. The Johnson Defendants represented to Plaintiff

that the fraudulent conduct at issue—including, specifically, the purveyance of motor vehicles to which they did not have title through dealer-to-dealer transactions without authorization of the owner—was their usual and customary way of doing business, and that no one had previously "complained about it."  The Defendants' criminal conduct will continue into the future because, *inter alia*, their fraud in connection with the Bugatti will continue to defraud subsequent purchasers of the Bugatti.  Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5).

158.    Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

159.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continued to cause injuries to Plaintiff in its business.  As a direct, proximate, and foreseeable result of Defendants' conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

160.    Plaintiff accordingly seeks an award of three times the damages it sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief as authorized by statute.

**COUNT 9**

**(Declaratory Relief,**

**Fla. Stat. § 86 *et seq.*)**

**Against All Defendants**

161.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 160 as if fully set forth herein.

162.     There exists a bona fide dispute between Plaintiff and Defendants regarding Defendants' sale of the Bugatti without notice to or authorization of Plaintiff or Mr. Birkenfeld, as well as regarding Defendants' subsequent further alleged sales of the Bugatti.

163.     Plaintiff has a justiciable question as to whether sale of the Bugatti by the Johnson Defendants and any subsequent sale thereof was legitimate.

164.     Plaintiff is in doubt as to the legitimacy of such sale or sales and, as such, seeks, requests and is entitled to a declaration of its rights and duties as follows:

  a.     Defendants' sale(s) of the Bugatti, and any subsequent sale(s) of the Bugatti, are illegitimate, unlawful, null and void;

  b.     Plaintiff is the rightful owner of the Bugatti; and

  c.     The Bugatti shall be returned to Plaintiff.

165.     There is a bona fide, actual, and present need for the foregoing declaration, because the matter must be addressed while the location and owner of the Bugatti are still able to be ascertained.

## COUNT 10
### (Unjust Enrichment)
### Against All Defendants

166.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 165 as if fully set forth herein.

167.     Plaintiff entered into an agreement with the Johnson Defendants for the Johnson Defendants to serve as Plaintiff's agent in connection with the sale of the Bugatti and the purchase of the Platinum Ferrari.  Platinum conferred a benefit upon Defendants in connection therewith—namely, the possession of the Bugatti.

168.     As described above, the Defendants surreptitiously entered into a series of fraudulent and self-interested transactions involving the sale of the Bugatti and the purchase of the Cole Ferrari.  Defendants have been unjustly enriched through their acceptance and retention of the benefit conferred by Plaintiff, *i.e.*, the Bugatti, which the Defendants proceeded to sell, on information belief, for $1.5 million.

169.     As a result, Defendants have been unjustly enriched at Plaintiff's expense— namely, by the approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

## COUNT 11

### (Money Had and Received)

### Against the Johnson Defendants

170.     Plaintiff repeats and realleges the allegations made in paragraphs 1 through 169 as if fully set forth herein.

171.     The Johnson Defendants have received money in connection with the sale of the Bugatti that was for the benefit of Plaintiff.  Specifically, the Bugatti was sold for $1.5 million.

172.     The aforesaid money was not used for the benefit of Plaintiff, but for the benefit of the Johnson Defendants.

173.     The Johnson Defendants have not given said moneys to Plaintiff.

174.     As described above, the Defendants surreptitiously entered into a series of fraudulent and self-interested transactions involving the sale of the Bugatti and the purchase of the Cole Ferrari.  Defendants have been unjustly enriched through their acceptance and retention of the benefit conferred by Plaintiff, i.e., the Bugatti, which the Defendants proceeded to sell, on information belief, for $1.5 million.

175.     As a result, Defendants have been unjustly enriched at Plaintiff's expense—namely, by the approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Restless Media GmbH, requests of the Court the following relief:

A.     For a declaratory judgment that:

    a.   Defendants' sale(s) of the Bugatti, and any subsequent sale(s) of the Bugatti, are illegitimate, unlawful, null and void;

    b.   Plaintiff is the rightful owner of the Bugatti; and

    c.   The Bugatti shall be returned to Plaintiff.

B.     For an award of damages in an amount to be ascertained at trial, but in no event less than the sum of $1,500,000;

C.     For an award of exemplary and punitive damages in an amount to be determined at trial;

D.     For an award of treble damages, as authorized by statute;

E.     For interest on said amount at the maximum rate permitted by law;

F.     For Plaintiff's attorneys' fees, as authorized by statute;

G.     For Plaintiff's cost of suit incurred herein;

H.     For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims and issues so triable.

Dated: January 24, 2022            Respectfully submitted,

                                   /s/ Michael A. Pineiro, Esq.
                                   MICHAEL A. PINEIRO, ESQ.
                                   mpineiro@mnrlawfirm.com
                                   DANIEL L. RASHBAUM, ESQ.
                                   drashbaum@mnrlawfirm.com
                                   BRYAN A. ALMEIDA, ESQ.
                                   balmeida@mnrlawfirm.com
                                   MARCUS NEIMAN RASHBAUM & PINEIRO LLP
                                   2 South Biscayne Boulevard, Suite 2530
                                   Miami, Florida 33131
                                   Telephone: 305.400.4260
                                   Facsimile: 866.780.8355

                                   GREGORY A. FAYER (Pro Hac Vice forthcoming)
                                   GFayer@fayergipson.com
                                   MICHELLE K. MILLARD (Pro Hac Vice forthcoming)
                                   MMillard@fayergipson.com
                                   FAYER GIPSON LLP
                                   2029 Century Park East, Suite 400
                                   Los Angeles, California 90067
                                   Telephone: 310.557.3558
                                   Facsimile:  310.557.3589

                                   Attorneys for Plaintiff, Restless Media GmbH