UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80120-RAR

**RESTLESS MEDIA GMBH**,

    Plaintiff,

v.

**THOMAS E. JOHNSON**, *et al.*,

    Defendants.

_____/

### ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants Thomas E. Johnson, Milestone Motorcars Sales LLC, Milestone Motorcars LLC ("Johnson Defendants"), Richard Cole, and Rick Cole Auctions, Inc.'s ("Cole Defendants") Motion to Dismiss [ECF No. 48], and Defendants Donald E. Williams and The Blackhawk Collection's ("Williams Defendants") Motion to Dismiss [ECF No. 50] (collectively the "Motions to Dismiss").[1] On February 1, 2023, the Court held a hearing [ECF No. 98] at which the Court heard argument on Defendants' Motions to Dismiss. Having considered Defendants' Motions to Dismiss, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motions to Dismiss [ECF Nos. 48, 50] are **GRANTED IN PART and DENIED IN PART** for the reasons stated herein.

### BACKGROUND

Plaintiff Restless Media GmbH brings this action following transactions involving two vintage cars. *See, e.g.*, Compl. [ECF No. 1] ¶¶ 1–12. As alleged in Plaintiff's Complaint—which

---

[1] The Motions to Dismiss are fully briefed and ripe for adjudication. *See* Pl.'s Resp. in Opp'n to Defs.' Mots. to Dismiss and for Jurisdictional Disc. [ECF No. 62]; Reply to Resp. in Opp'n to Mot. to Dismiss Filed by Milestone and Cole Defs. [ECF No. 74]; Reply to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss and for Jurisdictional Disc. [ECF No. 75].

is accepted as true for the purposes of this Order except where otherwise noted—beginning in approximately May 2021, Plaintiff's sole owner, Bradley Birkenfeld, sought to sell his 1935 Bugatti Type 57 ("Bugatti") and purchase a vintage Ferrari. *Id.* ¶¶ 2–6, 28. Birkenfeld discussed his interest in these transactions with Toby Ross, a vintage car dealer, who then introduced Birkenfeld to Defendant Thomas E. Johnson—the founder, owner, and manager of Defendants Milestone Motorcars LLC and Milestone Motorcars Sales LLC—so that Johnson could "assist and coordinate on both of the contemplated transactions." *Id.* ¶¶ 18, 28–31. Birkenfeld became interested in buying a specific 1972 Ferrari Daytona ("1972 Ferrari") after Ross and Johnson sent him information about the vehicle. *Id.* ¶¶ 6, 35. Defendants Milestone Motorcars LLC and Milestone Motorcars Sales LLC, through Johnson, then entered into a written agreement with Birkenfeld in which they agreed to act as Birkenfeld's agents for the purpose of selling the Bugatti. *Id.* ¶ 34–39; *see also* Automobile Consignment Sales Agreement [ECF No. 1-1]. Birkenfeld's expectation was that the Bugatti would sell for more than the purchase price of the 1972 Ferrari and he would receive the difference between the transactions. Compl. ¶ 33.

The Johnson Defendants proceeded to sell the Bugatti to Defendant The Blackhawk Collection—which is owned and operated by Defendant Donald E. Williams—without obtaining further and final approval from Birkenfeld. *Id.* ¶¶ 42–43. This contravened the agreement between the parties, which provided that the Johnson Defendants would "promptly notify [Birkenfeld] of any offer made for the purchase of the vehicle." *Id.* ¶ 39. Birkenfeld did not sign a title transferring ownership of the car nor were the Johnson Defendants authorized to transfer ownership on Birkenfeld's behalf. *Id.* ¶¶ 64–65. Instead, the Johnson Defendants used a "bill of sale" to sell the Bugatti in a "dealer-to-dealer transaction." *Id.* Around the same time, the Johnson Defendants, acting on behalf of Birkenfeld, bought a Ferrari from the Cole Defendants ("Purchased Ferrari") that was not the 1972 Ferrari. *Id.* ¶¶ 2, 44–48. The Johnson Defendants did not confirm they could

proceed with the transaction and did not inform Birkenfeld that the Purchased Ferrari was a different vehicle than the 1972 Ferrari. *Id.*

Approximately two months after the transactions occurred, Ross emailed Dr. Florian Lechner, Plaintiff's Managing Director, to inform Dr. Lechner of the transactions and inquire where Ross could send an invoice for each. *Id.* ¶ 48. Ross later informed Dr. Lechner that the sale price of the Bugatti and the purchase price of the Purchased Ferrari were both purportedly $750,000. *Id.* ¶¶ 51–52. However, Dr. Lechner subsequently discovered the Purchased Ferrari was in fact purchased for $575,000. *See id.* ¶¶ 58–59. Dr. Lechner also discovered that while the Bugatti was purportedly sold to the Williams Defendants for $750,000, the Williams Defendants resold the car for $1.5 million dollars the day after purchasing it. *Id.* ¶ 60. Further investigation revealed the Cole Defendants claimed in a social media post that they participated in a transaction related to the Bugatti. *See id.* ¶ 79.

On December 28, 2021, Birkenfeld assigned his rights in both vehicles to Plaintiff, and Plaintiff filed its eleven-count Complaint on January 24, 2022. *See id.* ¶ 17. Plaintiff alleges Defendants "engaged in a coordinated scheme to defraud Plaintiff," *see id.* ¶ 82, which they accomplished by *inter alia*, submitting a fraudulent invoice, making unauthorized repairs to the Bugatti, mixing the money paid for the Purchased Ferrari with consideration for another transaction, and making various false statements to Birkenfeld or those acting on his behalf. *See, e.g.*, *id.* ¶¶ 58–82.

Defendants move to dismiss the Complaint on several grounds, including that: (1) the Court lacks subject matter jurisdiction because Plaintiff has not sufficiently demonstrated the assignment of rights occurred; (2) even if Plaintiff has sufficiently proven the assignment occurred, several of Plaintiff's claims are non-assignable; (3) Plaintiff has failed to properly plead certain claims pursuant to the relevant Federal Rule of Civil Procedure; (4) the Complaint is a shotgun

pleading; and (5) Plaintiff erroneously asserts a claim for declaratory relief under section 86 of the Florida Statutes.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). However, when a party makes a factual attack on jurisdiction, the court may consider extrinsic evidence and "weigh the facts" to determine if jurisdiction exists. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335–36 (11th Cir. 2013) (quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)). The plaintiff has the burden of proving jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## ANALYSIS

### I. Factual Attack on Standing

Defendants move to dismiss the Complaint for lack of standing either because Plaintiff did not attach its assignment to the Complaint or has not sufficiently proven the assignment occurred. *See* Mot. to Dismiss [ECF No. 48] at 5–7; Mot. to Dismiss [ECF No. 50] at 13–15. The Court finds that Plaintiff has carried its burden of proving standing exists at this stage of the litigation.

The doctrine of standing "ensures the judiciary stays within its constitutional role: resolving 'Cases' and 'Controversies'—i.e., discrete disputes between parties." *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019) (quoting U.S. Const. art. III, § 2). To establish standing, a plaintiff must demonstrate it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019) (citing *Lujan*, 504 U.S. at 561). An "assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Tenet Florida, Inc.*, 918 F.3d at 1317 (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286 (2008)).

On December 27, 2022, the Court denied the Johnson and Cole Defendants' Motion for Jurisdictional Discovery [ECF No. 49] because they had "not offered sufficient evidence to generate a genuine dispute as to the jurisdictional facts." Order Den. Jurisdictional Disc. and Requiring Produc. of Assignment [ECF No. 91] at 2. However, the Court nonetheless required Plaintiff to file a copy of the assignment on the public docket. *See id.* at 2–3. The now-filed Assignment Agreement reflects that Birkenfeld assigned "all of [Birkenfeld's] rights and interests in and to the sale of [the Bugatti] and the purchase of [the 1972 Ferrari], of whatever kind or nature, including without limitation any and all claims in law and equity stemming therefrom." *See* [ECF No. 94] at 3. To the extent Defendants argue Plaintiff needed to attach the assignment to the Complaint, this argument is now moot.[2]

Further, the Johnson and Cole Defendants have offered little evidence to support a finding that jurisdiction does not exist. In support of their argument, the Johnson and Cole Defendants heavily rely on a letter from Birkenfeld's attorney, which was sent before Birkenfeld assigned his

---

[2] At the hearing, the Williams Defendants argued that because the Assignment Agreement does not explicitly reference them, it does not assign any claims against the Williams Defendants. However, the Assignment Agreement broadly assigns "all of the Assignor's rights and interests in and to the sale of [the Bugatti and the 1972 Ferrari] *of whatever kind or nature, including without limitation any and all claims in law and equity stemming therefrom* . . . ." [ECF No. 94] at 3 (emphasis added). The mere fact a subsequent parenthetical specifically identifies the assignment of potential claims against Johnson and Ross does not limit or otherwise circumscribe this broad language.

rights to Plaintiff, that does not reference Plaintiff as the injured party. *See* Mot. to Dismiss [ECF No. 48] Ex. A. The Court cannot draw the inference that because the letter does not identify Plaintiff as the injured party an assignment never occurred after it was sent. Weighing this lack of evidence against the produced assignment, the Court finds that Plaintiff has met its burden of proving—at this stage of the litigation—that the assignment occurred and subject matter jurisdiction exists. Defendants may, however, renew their arguments should they discover evidence that puts this Court's jurisdiction genuinely in dispute.[3]

**II. Assignability of Claims**

Defendants further argue that Plaintiff lacks standing to bring certain claims because they are non-assignable under relevant state law. The Court addresses these arguments in turn.

### a. *Florida Deceptive and Unfair Trade Practices Act*

The Johnson and Cole Defendants argue that claims for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), asserted against the Johnson Defendants in Count 5, cannot be assigned. Mot. to Dismiss [ECF No. 48] at 7–8. The Court disagrees.

Under Florida law "causes of action based on a contract *or a statute* c[an] be assigned." *E.g.*, *Wachovia Ins. Servs. v. Toomey*, 994 So. 2d 980, 988 (Fla. 2008) (emphasis added); *see also Forgione v. Dennis Pirtle Agency, Inc.*, 701 So. 2d 557, 559 (Fla. 1997) ("Under Florida law, parties can assign causes of action derived from a contract or a statute."), *receded from on other grounds by Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 757 (Fla. 2005). And under Florida law "assignability of a cause of action is the rule rather than the exception." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 496 (Fla. 3d DCA 1994) (quoting *Selfridge*

---

[3] At the hearing on the Motions, the Johnson and Cole Defendants questioned whether the assignment is supported by valid consideration under applicable law. As discussed on the record, the Court finds this argument premature given that there is little evidence to support a finding that Plaintiff lacks standing at this juncture. Defendants are not precluded from renewing this argument should they discover evidence or law in support of their position.

*v. Allstate Ins.*, 219 So. 2d 127, 128 (Fla. 4th DCA 1969)). Statutory rights may be assigned "unless there is an express prohibition in a statute, or a showing that an assignment would clearly offend an identifiable public policy." *Prescription Partners, LLC v. State of Fla., Dep't of Fin. Servs.*, 109 So. 3d 1218, 1222 (Fla. 1st DCA 2013) (quoting *VOSR Indus., Inc. v. Martin Props., Inc.*, 919 So. 2d 554, 556 (Fla. 4th DCA 2005)).

Defendants argue a claim arising under FDUTPA "is more similar to a personal injury tort action than an action to enforce contractual or property rights" and thus cannot be assigned. Mot. to Dismiss [ECF No. 48] at 8. No case has seemingly addressed whether a FDUTPA claim may be assigned. However, Birkenfeld's right was derived from a statute, and FDUTPA contains no express prohibition on assignment. *See generally* Fla. Stat. § 501.201 *et seq.* Defendants have not identified a specific public policy that would require the Court to deviate from the general presumption of allowing assignment of statutory rights under Florida law. Thus, the "rule" of assignability applies. *Ginsberg*, 645 So. 2d at 496. Claims for violations of FDUTPA are assignable.

### b. Texas Deceptive Trade Practices Act

The Johnson and Cole Defendants also argue that claims arising from violations of Texas' Deceptive Trade Practices Act ("DTPA"), asserted against the Cole Defendants in Count 6, cannot be assigned. Mot. to Dismiss [ECF No. 48] at 7–8. The Court agrees these claims are non-assignable.

In *PPG Industries, Inc. v. JMB/Houston Centers Partners Limited Partnership*, the Supreme Court of Texas squarely held that "DTPA claims generally cannot be assigned by an aggrieved consumer to someone else." 146 S.W.3d 79, 92 (Tex. 2004). This is because assignment would "defeat the primary purpose of the statute—to encourage individual consumers to bring such claims themselves." *Id.* at 82; *see also Encompass Off. Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 961–62 (E.D. Tex. 2011) (holding plaintiff could not acquire standing to assert a

DTPA claim through assignment). Rather than encourage aggrieved consumers to bring their causes of actions, assignment would "have just the opposite effect: instead of swindled consumers bringing their own DTPA claims, they will be brought by someone else." *PPG Indus.*, 146 S.W.3d at 85. The court noted several concerns with allowing assignment of claims arising under the DTPA: (1) DTPA's provisions allowing for treble damages were meant to "motivate affected consumers"; (2) determining the value of such actions is "never easy, due to the absence of objective measures or markets"; and (3) that "in many cases consumers may not even know they have DTPA claims when they sign a general assignment included in contractual boilerplate." *Id.* at 85–86. The court, however, declined to decide whether an assignor could assign claims that "were created within and could not be brought without the DTPA." *Id.* at 91.

Plaintiff attempts to limit *PPG Industries* by arguing that "the court confronted the specific issue of whether a property owner that purchased a building with allegedly defective windows could rely on the previous property owner's assignment of a warranty[.]" Pl.'s Resp. in Opp'n to Defs.' Mots. to Dismiss and for Jurisdictional Disc. at 11–12 n.7. However, the Court has identified no support for this limited reading of *PPG Industries*. *See Blake Marine Grp., LLC v. Frenkel & Co.*, 439 F. Supp. 3d 249, 254 (S.D.N.Y. 2020) ("Plaintiff's policy rationales for expanding the application of the DTPA to permit assignment . . . are foreclosed by the Texas Supreme Court's reasoning in *PGG* [sic] *Industries*."); *Encompass Off. Sols., Inc.*, 775 F. Supp. 2d at 961–62 (declining to limit *PPG Industries* to its facts). Allowing assignment of Birkenfeld's DTPA claims would contravene the policy of the statute as articulated by the Supreme Court of Texas. Claims arising out of violations of DTPA are non-assignable, and thus Plaintiff does not have standing to bring these claims.[4]

---

[4] Because Plaintiff lacks standing, the dismissal is without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008).

### c. **Breach of Fiduciary Duty**

The Johnson and Cole Defendants also challenge Birkenfeld's ability to assign claims for breach of fiduciary duty, asserted against the Johnson Defendants in Count 3. Mot. to Dismiss [ECF No. 48] at 9–10. The parties do not dispute that Florida law applies to this claim. *See id.* (only analyzing assignability of the claim under Florida law); Pl.'s Resp. in Opp'n to Defs.' Mots. to Dismiss and for Jurisdictional Disc. at 12–13 (same). Based on the alleged relationship between the parties, Birkenfeld's claims for breach of fiduciary duty were assignable.

To determine if a particular claim for breach of fiduciary duty is assignable a court must examine "both the duty and the relationship." *Toomey*, 994 So. 2d at 987. When the relationship between the parties is confidential and the law imposes certain constraints on the relationship, such as by protecting the confidentiality of the parties' communications, the relationship might preclude assignment of a breach of fiduciary duty claim. *See Forgione*, 701 So. 2d at 560. However, if one party can be easily substituted, it is unlikely the nature of the relationship will preclude assignment. *See id.* When examining the duty in a particular case, courts must determine whether a breach of the relevant duty was a "purely personal tort" such as medical malpractice or intentional infliction of emotional distress. *Toomey*, 994 So. 2d at 988–89. Ultimately, the court must determine whether the duty is "so 'intensely' personal that its breach is non-assignable." *Columbia Bank v. Turbeville*, 143 So. 3d 964, 970 (Fla. 1st DCA 2014) (quoting *Toomey*, 994 So. 2d at 987). Examining a claim for breach of fiduciary duty that arose from an insurance broker-insured relationship, the Supreme Court of Florida held that the claim could be assigned. *Toomey*, 994 So. 2d at 989.

Here, neither the relationship nor the duty prevent assignment. The Johnson Defendants were essentially engaged as sales brokers, and like the relationship in *Toomey*, this alleged relationship was neither "very personal," confidential, nor would the law place constraints on the parties' communications. *Toomey*, 994 So. 2d at 987. Additionally, a review of the consignment

sales agreement relating to the Bugatti shows no confidentiality provisions contained therein, further evidencing the non-confidential nature of the relationship. *See* Compl. Ex. A [ECF No. 1-1].

Similarly, the duty does not disfavor assignability. Here, the parties engaged in an arm's-length commercial transaction for the purpose of procuring the 1972 Ferrari and selling the Bugatti. *See, e.g.*, Compl. ¶¶ 30, 35–40. Like the relationship in *Turbeville*, while the services were rendered directly to the assignor, they were not so personal that a breach of the duty was akin to "purely personal tort[s]" such as medical malpractice and intentional infliction of emotional distress. *Turbeville*, 143 So. 3d at 970 (holding a claim for breach of fiduciary duty could be assigned where the assignor was a bank account holder and the defendant was a former bank employee tasked with "ensur[ing] the safekeeping of [the assignor's] monies"). Rather, the breach of fiduciary duty claims asserted by Plaintiff are reminiscent of Plaintiff's fraud claims, which it also asserts against the Johnson Defendants. *Toomey*, 994 So. 2d at 988–89 (analogizing the breach of fiduciary claim brought to a bad faith claim); *see also ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 587 F. Supp. 3d 1205, 1211 (S.D. Fla. 2021) (noting that "Florida law permits the assignment of fraud-based tort claims"). Consequently, the breach of fiduciary duty claims asserted in the Complaint are assignable.

### d. *Assignability of Certain Other Claims*

The Williams Defendants also, in conclusory fashion, assert that Birkenfeld's claims for aiding and abetting breach of fiduciary duty, civil conspiracy, and unjust enrichment are non-assignable because they are "personal tort claims." Mot. to Dismiss [ECF No. 50] at 15. As with the claims for breach of fiduciary duty, there is no dispute Florida law applies to these claims. *See id.* (only citing Florida law); Pl.'s Resp. in Opp'n to Defs.' Mots. to Dismiss and for Jurisdictional Disc. at 12–14 (same). Florida law generally prohibits the assignment of certain personal tort claims, such as personal injury and professional malpractice claims. *See Marcum*

*LLP v. Potamkin*, 107 So. 3d 1193, 1194 n.2 (Fla. 3d DCA 2013).  However, as the Court has determined that the breach of fiduciary duty claims are assignable, *Toomey* does not prevent the assignment of a claim for aiding and abetting breach of fiduciary duty.  Additionally, the claims for civil conspiracy and unjust enrichment relate to misappropriation of property, and causes of action arising from damage to property are assignable.  *State Road Dep't v. Bender*, 2 So. 2d 298, 300 (Fla. 1941) ("[I]t is well settled that a cause of action growing out of injury to property may be assigned . . . .").  Therefore, the general rule of assignability applies, and these claims are assignable.  *See Ginsberg*, 645 So. 2d at 496.

### III. Whether the Complaint is a Shotgun Pleading

All Defendants have argued Plaintiff's Complaint is a shotgun pleading.  Without specifying any specific paragraph, the Johnson and Cole Defendants take issue with the fact that the Complaint "lumps" certain Defendants together in sentences or refers to them collectively.  Mot. to Dismiss [ECF No. 48] at 10.  They also argue the Complaint should be dismissed because it "repeatedly adopts the allegations of all preceding counts, uses conclusory, vague, and immaterial facts, and asserts multiple claims against multiple defendants in the same counts without specifying which of the defendants are responsible for which acts or omissions." *Id.*  The Williams Defendants argue the Complaint should be dismissed because: (1) "the factual allegations are repetitive, disorganized, and barely, if at all, comprehensible" and (2) the "Complaint re-alleges all preceding counts, is conclusory, and asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions."[5]  Mot. to Dismiss [ECF No. 50] at 2–3.

---

[5] The Williams Defendants also argue "it defies logic to suggest that the Williams Defendants" would engage in the alleged scheme, and that "the Williams Defendants had nothing to do with the purchase of the [Purchased] Ferrari."  Mot. to Dismiss [ECF No. 50] at 4–5.  These are not grounds for dismissing the Complaint as a shotgun pleading.

Page **11** of **14**

The Eleventh Circuit has routinely condemned "shotgun pleadings" because they are a "waste [of] scarce judicial resources." *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). There are four types or categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The first type are pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Second are pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third category encompasses pleadings that do "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. And fourth are pleadings that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. When a party who has filed a shotgun pleading is represented by counsel, the court must give the party a chance to replead. *Vibe Micro, Inc.*, 878 F.3d at 1295.

Plaintiff's Complaint is the first and most common type of shotgun pleading: one that contains multiple counts but realleges the allegations of all preceding counts. *See* Compl. ¶¶ 92, 101, 107, 114, 125, 133, 139, 161, 166, 170. This pleading deficiency is compounded by the fact that in certain counts Plaintiff expressly relies on allegations not reproduced directly within that count. *See, e.g., id.* ¶ 95; *id.* ¶ 103 ("The Johnson Defendants' tortious and wrongful conduct complained of herein includes, *without limitation* . . . ." (emphasis added)). Simply put, it would be a waste of judicial resources to address Defendants' arguments related to whether Plaintiff has stated a claim under Rule 8 or Rule 9(b) before Plaintiff has amended its Complaint. To the extent Plaintiff wishes to preemptively address Defendants' arguments related to Rule 8 and Rule 9(b) in formulating its amended complaint, however, it is granted leave to do so.

Defendants' other arguments are unpersuasive. Without deciding at this juncture whether Plaintiff has stated a claim as to any particular count, a review of the Complaint shows that it is—at the very least—not "replete" with conclusory, vague, and immaterial facts. Defendants are also incorrect that by referring to multiple Defendants collectively, the Complaint is rendered a shotgun pleading. When Defendants are referred to collectively, the solution is to simply construe allegations containing the collective references as "applying to each defendant individually." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014). This type of collective reference only presents a problem "where it results in a complaint that fails to give each defendant notice of the claims against it." *Id.* The fact that "each of the [Johnson] defendants' and the Cole defendants' responses would be different" as to any given collective paragraph does not render the Complaint a shotgun pleading—indeed, the fact they are able to represent that each of their answers would be different contradicts any assertion that the Complaint fails to put them on notice of the allegations against them. *See* Mot. to Dismiss [ECF No. 48] at 11. The Court will not dismiss the Complaint on these grounds, and the Court will not impose sanctions at this time as urged by the Williams Defendants.[6] *See* Mot. to Dismiss [ECF No. 50] at 6.

In sum, Plaintiff must file an amended complaint in which it only realleges relevant preceding paragraphs in each count and removes its DTPA claims.[7] Accordingly, it is hereby

---

[6] The Court notes it is not ruling on the Williams Defendants' separate Motion for Sanctions Under Rule 11 and 28 U.S.C. § 1927 [ECF No. 85] at this time.

[7] The Williams Defendants also challenge Plaintiff's ability to assert a claim for declaratory relief under section 86 of the Florida Statutes, arguing, in part, that this is an inappropriate vehicle for relief. Mot. to Dismiss [ECF No. 50] at 10–12. Florida's Declaratory Judgment Act is "a procedural mechanism that confers subject matter jurisdiction on Florida state courts." *550 Seabreeze Dev., LLC v. Ill. Union Ins. Co.*, No. 19-24611, 2020 WL 473610, at *2 (S.D. Fla. Jan. 29, 2020). Because the Court would have to apply the Federal Declaratory Judgment Act, Plaintiff is encouraged to plead a claim under the proper statute in its amended complaint. *See United State Sols., LLC v. Powell*, No. 19-61970, 2019 WL 9045387, at *2 (S.D. Fla. Oct. 10, 2019) ("Where, as here, the claim for declaratory relief arises in a federal diversity jurisdiction action, the Court must apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201, not the Florida Declaratory Judgment Act.").

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motions to Dismiss [ECF Nos. 48, 50] are **GRANTED IN PART and DENIED IN PART**. Count 6 is dismissed *without prejudice and without leave to amend*. All remaining counts are dismissed *without prejudice and with leave to amend*.

2. Plaintiff shall file an amended complaint in which each count only realleges preceding paragraphs relevant to a given count on or before **February 25, 2023**.

3. As the Court has adjudicated the pending Motions to Dismiss, the Court finds it appropriate to allow discovery in this matter to proceed. Therefore, the stay of discovery [ECF No. 80] is **LIFTED**.

4. On or before **February 25, 2023**, the parties shall file a revised Joint Scheduling Report for the Court's consideration.

**DONE AND ORDERED** in Miami, Florida, this 1st day of February, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**