UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-80120-RAR

**RESTLESS MEDIA GMBH**,

    Plaintiff,

v.

**THOMAS E. JOHNSON**, *et al.*,

    Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' CONSOLIDATED MOTION TO DISMISS**

**THIS CAUSE** comes before the Court upon Defendants Thomas E. Johnson, Milestone Motorcars Sales LLC, and Milestone Motorcars LLC's ("Johnson Defendants"); Richard Cole, and Rick Cole Auctions, Inc.'s ("Cole Defendants"); and Janet Williams, Robert Williams, and Elliot Stein [as Personal Representatives of the Estate of Donald Williams] and The Blackhawk Collection's ("Williams Defendants") Consolidated Motion to Dismiss Amended Complaint ("Motion") filed on July 10, 2023, [ECF No. 129].[1] Having considered Defendants' Consolidated Motion to Dismiss, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Consolidated Motion to Dismiss Amended Complaint, [ECF No. 129], is **GRANTED in part** and **DENIED in part** for the reasons stated herein.

**BACKGROUND**

Plaintiff Restless Media GmbH ("RMG") brings this amended action related to transactions involving several vintage cars. *See, e.g.*, Am. Compl., [ECF No. 100], ¶¶ 1–82. Plaintiff's

---

[1] The Motion to Dismiss is fully briefed and ripe for adjudication. *See* Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss Amended Compl., [ECF No. 130] ("Response"); Defs. Reply to Resp. in Opp'n to Mot. to Dismiss Amended Compl., [ECF No. 133] ("Reply").

Amended Complaint—which is accepted as true for the purposes of this Order except where otherwise noted—alleges the following relevant facts. Plaintiff RMG is a closely held German corporation that purchases and holds cars on behalf of Bradley Birkenfeld, the sole owner of RMG. *Id*. ¶ 16. Dr. Florian Lechner—a resident of Munich, Germany—is RMG's Managing Director. *Id*. On or about May 2, 2021, Mr. Birkenfeld expressed to Toby Ross of Ross Classic—a vintage car dealer with whom Mr. Birkenfeld had previous dealings—his interest in purchasing a vintage Ferrari and selling his 1935 Bugatti Type 57 automobile, VIN #57322 ("Bugatti"). *Id*. ¶¶ 27–29.

Mr. Ross referred Mr. Birkenfeld to Defendant Thomas "Ted" Johnson of Milestone Motorcars in Boynton Beach, Florida to assist with both transactions. Am. Compl. ¶ 30. Mr. Ross, with Mr. Johnson's assistance, sent Mr. Birkenfeld information regarding several different vintage Ferraris that met Mr. Birkenfeld's criteria. *Id*. ¶ 31. After reviewing these options, Mr. Birkenfeld expressed an interest in a Ferrari 365 GTB/4 Ferrari Daytona, model year 1968 to 1973, for which Mr. Ross noted an estimated price range of "500/650," *i.e.*, $500,000-$650,000. *Id*. ¶ 32.

Of note, Mr. Birkenfeld had also recently invested approximately $650,000 to repair and restore his Bugatti. Am. Compl. ¶ 33. Based on the value of the Bugatti and the quoted price of the Ferrari, Mr. Birkenfeld expected his Bugatti to sell for significantly more than the purchase price of the Ferrari; accordingly, he expected to be paid the difference. *Id*. On June 29, 2021, Mr. Johnson sent Mr. Birkenfeld a draft "standard consignment agreement" for the Bugatti sale as well as information regarding a certain Ferrari with a Platinum rating ("Platinum Ferrari") that apparently met Mr. Birkenfeld's specifications. *See id*. ¶¶ 34–35. Mr. Birkenfeld then asked Mr. Johnson to proceed with negotiations to procure the Platinum Ferrari. *Id*. ¶ 35.

Next, on July 16, 2021, Defendants Milestone Motorcars, LLC and Milestone Motorcars Sales, LLC, through Mr. Johnson, entered into an "Automobile Consignment Sales Agreement" ("Agreement") with Birkenfeld in which they agreed to act as Mr. Birkenfeld's agents for the

purpose of selling the Bugatti for the "gross selling price" and to notify Mr. Birkenfeld of any purchase offers for the Bugatti. Am. Compl. ¶¶ 34–39; *see also* Automobile Consignment Sales Agreement, [ECF No. 100-1] at 1. By their agreement, Milestone Motorcars, LLC and Milestone Motorcars Sales, LLC, through Johnson, also verified that the Bugatti had no mechanical or cosmetic issues and agreed to "consult with the Principal [Mr. Birkenfeld] before incurring any repair costs in excess of $500." *Id.* ¶¶ 68–69; [ECF No. 100-1] at 1–2. So far, the wheels were still on the track.

But in August the relationship took a negative turn. Specifically, on August 18, 2021, Plaintiff alleges the Johnson Defendants proceeded to sell the Bugatti to the Williams Defendants without obtaining further and final approval from Birkenfeld in violation of the Agreement. *Id.* ¶¶ 42–43. Indeed, Plaintiff claims that the Johnson Defendants did not inform Mr. Birkenfeld of the sale until October 19, 2021—nearly two months after it had already occurred. *Id.* ¶ 43. Critically, Mr. Birkenfeld never signed a title transferring ownership of the car, nor were the Johnson Defendants authorized to transfer ownership on Birkenfeld's behalf. *Id.* ¶¶ 64–66. Instead, Plaintiff alleges, upon information and belief, that the Johnson Defendants used a "bill of sale" to sell the Bugatti in a "dealer-to-dealer transaction," all without authorization from Mr. Birkenfeld. *Id.* ¶ 64–65.

Meanwhile in early September 2021, the Johnson Defendants represented to Mr. Birkenfeld that they were making good progress on the purchase of the Platinum Ferrari for which Mr. Birkenfeld had approved negotiations. Am. Compl. ¶ 44. But prior to this representation, on August 30, 2021—unbeknownst to Mr. Birkenfeld although purportedly on his behalf—the Johnson Defendants had already purchased, from the Cole Defendants, a completely different 1973 Ferrari Daytona, VIN #16907 ("Purchased Ferrari"). *Id.* ¶¶ 2, 45. Plaintiff alleges that Mr. Birkenfeld had neither approved nor requested this type of Ferrari and that it belonged personally

to Defendant Richard Cole. *Id.* ¶¶ 2, 45–46. Plaintiff also alleges that the Johnson Defendants never presented the Purchased Ferrari as an option; did not confirm with Mr. Birkenfeld or Dr. Lechner that they could proceed with the transaction; and did not inform Mr. Birkenfeld that the Purchased Ferrari was a different vehicle than the Platinum Ferrari for which Mr. Birkenfeld had approved negotiations. *Id.* ¶¶ 3, 46–47.

On October 19, 2021, approximately two months after the transactions occurred, Mr. Ross emailed Dr. Lechner to inform him of the transactions and to inquire where and to whom Mr. Ross could send the commissions invoice for the two transactions (*viz.* "[t]he Bugatti is sold and the Ferrari purchased"). Am. Compl. ¶ 48. Ross later informed Dr. Lechner that the sale price of the Bugatti and the purchase price of the Purchased Ferrari were both purportedly $750,000. *Id.* ¶¶ 51–52. Mr. Ross did not inform Dr. Lechner that the Ferrari that had been purchased was allegedly not the Platinum Ferrari that Mr. Birkenfeld had authorized the Johnson Defendants to pursue. *Id.* ¶ 51.

However, upon independent investigation, Dr. Lechner subsequently discovered the Purchased Ferrari appeared to have been purchased for $575,000 pursuant to an invoice obtained independently and directly from the Cole Defendants on November 10, 2021. *Id.* ¶¶ 58–59. Dr. Lechner also discovered that while the Bugatti was purportedly sold to the Williams Defendants for $750,000, the Williams Defendants resold the car for $1.5 million dollars on August 19, 2021 —just one day after purchasing it. *Id.* ¶ 60. Further investigation by Plaintiff revealed that both the Cole Defendants and Williams Defendants independently claimed in October 2021 social media posts that they had each participated in transactions related to the Bugatti. *See id.* ¶ 79.

The thrust of Plaintiff's Amended Complaint alleges that Defendants "engaged in a coordinated scheme to defraud Plaintiff through a series of hidden, undisclosed transactions from which Defendants appropriated to themselves consideration and property that was rightfully

Plaintiff's," Am. Compl. ¶ 82, which they accomplished by submitting a fraudulent invoice, making unauthorized repairs to the Bugatti, mixing the money paid for the Purchased Ferrari with consideration for another transaction, and making various false statements to Birkenfeld and his agent acting on his behalf. *See, e.g., id.* ¶¶ 58–82.

Defendants once again move to dismiss the Complaint on several grounds, including: (1) the Amended Complaint remains a shotgun pleading and therefore must be dismissed as to all Defendants; (2) the Amended Complaint makes inconsistent allegations regarding the Cole Defendants as to Counts 4, 8, and 9 and thus fails to state a claim against either of the Cole Defendants; (3) the Amended Complaint fails to state a claim against Mr. Cole individually; (4) the Amended Complaint fails to state a claim against Mr. Williams individually (and accordingly, against his estate); and (5) Plaintiff's cause of action for declaratory judgment is duplicative of its breach of contract and fraud claims and must therefore be dismissed as to all Defendants. *See generally* Mot. to Dismiss.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 556). "[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp.*, 550 U.S. at 556). "[W]hen plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Id*. (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

Further, when evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all inferences in favor of the plaintiff. *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017). And the "court must limit its consideration to the pleadings and exhibits attached to the pleadings." *Gubanova v. Miami Beach Owner, LLC*, No. 12-22319, 2013 WL 6229142, at *1 (S.D. Fla. Dec. 2, 2013) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

## ANALYSIS

### I. The Amended Complaint Does Not Constitute a Shotgun Pleading

Defendants first reprise the argument from their prior attempt at dismissal, claiming that Plaintiff's Amended Complaint remains a "shotgun pleading" and therefore must be dismissed. Mot. at 2–5. Specifically, Defendants take issue with the fact that the Amended Complaint "repeats and realleges" each of the allegations in paragraphs 1 through 82 within each specific count. Mot. at 2. But as Plaintiff correctly points out, this time around, Defendants misread the Court's prior Order granting in part and denying in part Defendants' Motions to Dismiss ("First Order"), [ECF No. 99], as well as misapprehend Eleventh Circuit law concerning shotgun pleadings.

As this Court's First Order discussed at length, the Eleventh Circuit has routinely condemned "shotgun pleadings" because they are a "waste [of] scarce judicial resources." *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). There are four types or categories of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The first type are pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. Second are pleadings that are "replete with conclusory, vague, and immaterial facts not obviously connected

to any particular cause of action." *Id.* at 1321–22. The third category encompasses pleadings that do "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. And fourth are pleadings that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

While it is true that Plaintiff's original Complaint was the first and most common type of shotgun pleading, Plaintiff is correct that its Amended Complaint adequately remedies the first Complaint's defects. For example, while the original Complaint impermissibly contained multiple counts that realleged facts from the preceding counts in each subsequent count—a defect that rendered it "the first and most common type of shotgun pleading," First Order at 12—the Amended Complaint suffers from no such infirmity. Indeed, the Amended Complaint makes it clear that only the previous, generalized factual allegations in paragraphs 1–82 are realleged within each of the Amended Complaint's ten counts. *See* Am. Compl. ¶¶ 83, 92, 101, 107, 114, 125, 131, 153, 168, 172. And as Plaintiff also correctly points out, this practice is plainly permitted under Eleventh Circuit caselaw. *See, e.g.*, *Weiland*, 792 F.3d at 1324 (determining plaintiff's complaint was not a shotgun pleading); *In re Takata Airbag Prod. Litig.*, No. 14-24009, 2023 WL 4363938, at *3 (S.D. Fla. May 25, 2023) (finding that supplement to complaint, which incorporated all factual allegations but not allegations of all preceding counts did not constitute a shotgun pleading); *Prestige Ins. Grp. v. Allstate Ins. Co.*, No. 21-60515, 2022 WL 1091825, at *2 (S.D. Fla. April 12, 2022) (same); *Gubanova*, 2013 WL 6229142, at *6 (same).

Defendants' other attempts to assert the existence of a shotgun pleading are equally unavailing. Defendants mistakenly assert that in each count, Plaintiff was required to allege only those factual allegations that pertain specifically to that count. But Plaintiff's incorporation of factual allegations does not render the Amended Complaint a shotgun pleading. *See, e.g.*, *Prestige*

*Ins. Grp.*, 2022 WL 1091825, at *2 (holding "Allstate's argument that the First Amended Complaint is a shotgun pleading because the counts incorporate all factual allegations rather than the ones specific to that claim fails," and reiterating the oft-cited principle that "[i]ncorporating all factual allegations does not make a complaint a shotgun pleading.") (citing *Weiland*, 792 F.3d at 1321-23).

Defendants are also incorrect that by referring to multiple Defendants collectively, the Amended Complaint is rendered an impermissible shotgun pleading. As this Court already determined in its First Order, "[w]hen Defendants are referred to collectively, the solution is to simply construe allegations containing the collective references as 'applying to each defendant individually.'" First Order at 13 (quoting *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014)). Once again, "this type of collective reference only presents a problem 'where it results in a complaint that fails to give each defendant notice of the claims against it.'" *Id.* (quoting *Sprint Sols., Inc.*, 44 F. Supp. at 1227). There is no such problem here. Accordingly, the Court again concludes, as it did in its First Order, that "the fact that [Defendants] are able to represent that each of their answers would be different contradicts any assertion that the [Amended] Complaint fails to put them on notice of the allegations against them." *Id*. (alteration added).

Defendants' final line of attack in this section of the Consolidated Motion to Dismiss appears to suggest that the Amended Complaint should be dismissed because it "reads like an evidentiary narrative, redundant, repetitive, not a notice pleading." Mot. at 3. But this argument is misplaced. "As a general matter, it is well settled that the plaintiff is the master of its complaint." *Hill v. Bell South Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004). Defendants "may disagree with [Plaintiff's] method of pleading, but [Plaintiff] is vested with the ultimate decision of how to present its case." *Palm Gardens Condo. Ass'n, Inc. v. Nationwide Mut. Fire*

*Ins. Co.*, No. 6:07-cv-01498-Orl-UAM, 2007 WL 3306766, at *3 (M.D. Fla. Nov. 6, 2007) (denying defendant's motion to dismiss or for more definite statement); *see also 227 NW 13 Ave, Inc. v. Scottsdale Ins. Co.*, No. 21-21405, 2022 WL 4229420, at *2 (S.D. Fla. Aug. 8, 2022) (stating that as "master of the complaint," "it is a plaintiff's prerogative to frame its pleadings as it chooses"). And as the Court explained in its First Order addressing a nearly identical argument by Defendants, "a review of the [Amended] Complaint shows that it is—at the very least—not replete with conclusory, vague, and immaterial facts." First Order at 13 (alteration added); *see also Green v. Miami-Dade Cnty.*, No. 08-20016, 2008 WL 11333589, at *1 (S.D. Fla. Oct. 16, 2008) ("The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Rather, the generous notice pleading standard only requires that a defendant be put on notice of the general nature of the claims").

In sum, the Court agrees with Plaintiff's observation that "[t]he fact that Defendants can restate Plaintiff's allegations shows that Defendants are 'on notice of,' and comprehend, Plaintiff's 'claims for relief,' while contradicting any assertion to the contrary." Response at 14 (quoting *Green*, 2008 WL 11333589, at *1). Accordingly, Defendants' assertion that the Amended Complaint still constitutes a shotgun pleading is misplaced.

## II. The Amended Complaint Properly Pleads in the Alternative

Defendants next argue that Plaintiff's Amended Complaint contains inconsistent allegations related to Counts 4, 8, and 9 regarding the role of the Cole Defendants in the alleged transactions. Mot. at 5–7. Accordingly, Defendants ask the Court to dismiss these counts as to the Cole Defendants. *Id.* In support of their argument, Defendants state "[t]he Amended Complaint is rife with conflicting 'factual' allegations about the sale and resale of the Bugatti." *Id.* at 5 (quotations in original). Defendants cite no law in this section of their Motion, so the legal

basis for Defendants' position is not entirely clear. Nonetheless, the Court construes Defendants' argument as improper alternative pleading.

Under Fed. R. Civ. P. 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Under Fed. R. Civ. P. 8(d)(3), "[a] party may state as many separate claims or defenses as it has, regardless of consistency." As the Eleventh Circuit has noted, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273-74 (11th Cir. 2009); *see also Diaz-Martinez v. Miami-Dade County*, No. 07-20914, 2009 WL 2970468, at *15, 19 (S.D. Fla. Sept. 10, 2009) (stating plaintiff "has the right to assert multiple and alternative theories of liability and have each considered on its own merits"); *McCreary v. Brevard Cnty.*, No. 6:09-cv-1394-Orl-19DAB, 2010 WL 298395, at *6 (M.D. Fla. Jan. 20, 2010) (concluding plaintiff's complaint, which set forth separate counts that each alleged a separate course of action or inaction undertaken by defendant, was permissible under Rule (8)(d)(2)).

Here, Defendants' argument that Plaintiff impermissibly presents inconsistent theories of liability is explicitly foreclosed by Eleventh Circuit precedent:

> [W]e are not troubled by what the district court saw as inconsistent allegations. Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims. Thus, UTC's complaint is not subject to dismissal simply because it alleges that both Mazer, individually, and West–Hem committed the tortious conduct, even if it would be impossible for both to be simultaneously liable (which question of impossibility we need not, and do not, resolve).

*United Techs. Corp.,* 556 F.3d at 1273–74. And with respect to Defendants' additional argument concerning Plaintiff's inability to describe the precise dynamics and level of involvement among

the various Defendants in the alleged scheme, the Eleventh Circuit's analysis in *United Techs. Corp.* is equally instructive:

> Furthermore, it is hard to imagine how UTC could have pled its case with greater specificity or accuracy at this stage. The intricacies of the scope of Mazer's employment authority, as well as the details regarding exactly who provided the funds for DiLorenzo and received the benefit of the payments from APM, are peculiarly within the knowledge of Mazer and West–Hem. Although UTC has pled a reasonable good faith basis for its claims against both Mazer and West–Hem, it has not yet been in a position to know all of the particulars. Should discovery reveal that Mazer was undisputably outside the scope of his employment or that he, not West–Hem, was the sole beneficiary of the sale of the blueprints, then West–Hem may be entitled to summary judgment or judgment as a matter of law. At the initial pleading stage, however, UTC's allegations were sufficient to state a claim.

*Id.* at 1274. The same is true here. The facts of the transactions at issue are peculiarly within the knowledge of Defendants, and, as in *United Techs. Corp.*, "it is hard to imagine how [Plaintiff] could have pled its case with greater specificity or accuracy at this stage." *Id.* (alteration added).

In sum, alternative and inconsistent pleading is explicitly permitted by the Federal Rules of Civil Procedure, and Defendants' attempt to contest the Cole Defendants' involvement in the alleged scheme is a factual dispute inappropriate for resolution at this stage of the litigation. Consequently, Defendants' improper alternative pleading attack fails.

### III. Plaintiff States Individual Capacity Claims Against Richard Cole

Defendants next argue that the Amended Complaint fails to state claims against Richard Cole and Donald Williams (now the Williams estate) in their individual capacities. Mot. at 7–10. In support, Defendants deploy a corporate-veil dismissal theory, arguing that Mr. Cole's and Mr. Williams's statuses as officers in their respective business associations should suffice to shield them from individual liability. *See id.* Specifically, Defendants seek dismissal of the counts against Mr. Cole and Mr. Williams for Aiding and Abetting a Breach of Fiduciary Duty (Count 4); Civil Conspiracy (Count 6); Violations of the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), 18 U.S.C. §§ 1961–1968 (Count 7); Declaratory Judgment (Count 8), and Unjust Enrichment (Count 9). *See generally* Am. Compl.[2] The Court addresses each individual Defendant in turn.

### A. Claims Against Mr. Cole Individually

As to the primary tort alleged against Mr. Cole in the Amended Complaint—aiding and abetting a breach of fiduciary duty—Florida law is clear that officers or agents of a corporation may be held liable for their own torts even if such acts are performed within the scope of their employment or as corporate officers or agents. *White-Wilson Med. Ctr. v. Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. 1st DCA 1986) (citing *Littman v. Commercial Bank & Trust Co.,* 425 So. 2d 636, 640 (Fla. 3d DCA 1983)); *see also White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005). And although Florida does not recognize civil conspiracy as a freestanding tort, *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018), "the gist of a civil conspiracy is not the conspiracy itself, but the underlying civil wrong occurring pursuant to the conspiracy and which results in the plaintiff's damages." *Id*. (citation omitted). Here, though "the conspiracy does not give rise to an independent cause of action" it nonetheless remains "a device to allow a plaintiff to spread liability to those involved in causing the underlying tort." *Id*. (citation omitted). Therefore, Mr. Cole can, as a matter of law, be held individually liable for his alleged involvement in aiding and abetting a breach of fiduciary duty and the accompanying tort of civil conspiracy.

---

[2] "[F]ederal courts are to apply state substantive law and federal procedural law" when deciding state law claims. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Thus, when federal courts are sitting in diversity jurisdiction as here, "only substantive state law must be applied" to state law claims, while "federal law governs matters of procedure." *Lundgren v. McDaniel*, 814 F.2d 600, 605 (11th Cir. 1987) (citing *Nat'l Distillers & Chem. Corp. v. Brad's Mach. Prods., Inc.*, 666 F.2d 492, 494–95 (11th Cir. 1982)). Accordingly, Florida law applies with respect to Plaintiff's state law claims (Counts 1–6; 9–10), and federal law applies to Plaintiff's RICO and declaratory judgment claims (Counts 7 and 8).

The same is true with respect to the civil RICO violations alleged. *See*, *e.g.*, *Cedric v. Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (explaining that in the RICO context, "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1327 (11th Cir. 2004) (holding that "[c]orporations and their agents are distinct entities and, thus, agents may be held liable for their own conspiratorial actions" in the RICO context). Of course, this outcome makes perfect sense, as Defendants' argument that limited liability and corporate veil principles should shield alleged tortfeasors and RICO conspirators from individual liability would permit (and even encourage) tortfeasors and RICO conspirators to hide behind the corporate form.

With respect to Count 8 for Declaratory Judgment, Defendants make no argument as to how or why limited liability and corporate veil principles would or should prevent the Court from granting the requested declaratory relief, and the Court has identified no authority supporting such a theory. Accordingly, the claim for declaratory relief against Mr. Cole in his individual capacity survives dismissal.

Finally, the unjust enrichment count alleged against Mr. Cole in his individual capacity also survives dismissal. The Court notes that "a claim for unjust enrichment sounds in quasi-contract, not tort," *ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997), and therefore under normal circumstances, limited liability and corporate veil principles should apply to shield an individual from liability. But here, the Amended Complaint also alleges that "Mr. Johnson later revealed that the vehicle [the Cole Ferrari] was not owned by Rick Cole Auctions, but was a personal vehicle owned by Rick Cole." Am. Compl. ¶ 55. This fact, coupled with additional allegations regarding Mr. Cole, suffice to state a claim for unjust enrichment against him.

### B. Claims Against Mr. Williams Individually

The foregoing analysis applies with equal force to defeat Defendants' argument for dismissal of the claims against Mr. Williams individually (now his estate), Mot. at 9–10, with the key exception of the unjust enrichment claim. Unlike the Amended Complaint's allegations with respect to the Cole Defendants, in which Plaintiff alleges that the Cole Ferrari was owned personally by Mr. Cole rather than by Rick Cole Auctions, there is no such analogous fact alleged with respect to Mr. Williams and/or the Williams Defendants.

In other words, the Amended Complaint is devoid of allegations that the Bugatti or any other vehicle alleged to be involved in these transactions was ever owned by Mr. Williams in his individual capacity. Because "a claim for unjust enrichment sounds in quasi-contract, not tort," *ThunderWave, Inc.*, 954 F. Supp. at 1566, limited liability and corporate veil principles apply. Plaintiff has not advanced any argument as to why the corporate veil should be pierced to subject Mr. Williams to individual liability on the unjust enrichment claim. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055–56 (Fla. 3d DCA 2008) (reversing the portion of the judgment holding company's president personally liable on an unjust enrichment theory because plaintiff had not demonstrated the requisite elements to pierce the corporate veil under Florida law). Accordingly, the claim for unjust enrichment in Count 9 against Mr. Williams's estate in an individual capacity warrants dismissal.

### IV.   Plaintiff Properly States a Claim for Declaratory Relief

Finally, Defendants move to dismiss Count 8 of the Amended Complaint for declaratory relief, arguing that it is duplicative of Plaintiff's breach of contract and fraud claims against the Johnson Defendants and therefore fails to state a claim. Mot. at 10–11. Although Plaintiff advances fraud and breach of contract causes of action against only the Johnson Defendants, Am.

Compl. ¶¶ 83–100, Defendants' Motion relies upon this duplicative-counts theory to argue for dismissal of the Declaratory Judgment count as to *all* Defendants. *Id.* (emphasis added). But for the reasons set forth below, that argument also fails as to all Defendants.

"Jurisdiction under both Article III and the Declaratory Judgment Act requires the party invoking federal jurisdiction to show, at an 'irreducible minimum' that when the complaint was filed: (1) the invoking party had suffered an actual or threatened injury due to the defendant's conduct; (2) the injury can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable ruling from the court." *Bacardi USA, Inc. v. Young's Market Co.*, 273 F. Supp. 3d 1120, 1127 (S.D. Fla. 2016) (citing *Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995)); *see also Medmarc Casualty Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) ("[A] declaratory judgment serves to clarify the legal relations and is not for the purpose of making factual determinations.") (citations omitted). The Court has "exceptionally broad discretion in deciding whether to issue a declaratory judgment." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "The only relevant inquiry in a motion to dismiss a declaratory-judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Brodsky v. USAA Gen. Indem. Co.*, No. 19-62860, 2020 WL 231189, at *2 (S.D. Fla. Jan. 15, 2020) (citation omitted).

"If the determination of the plaintiff's breach of contract claim involves the same factual dispute as the declaratory judgment claim, then the plaintiff will be able to secure full, adequate and complete relief through the breach of contract claim and consequently the declaratory action must be dismissed." *Brodsky,* 2020 WL 231189, at *2 (cleaned up). But when a declaratory

judgment claim "seeks, in addition to a declaration, relief that amounts to an injunction or specific performance," such a claim may properly coexist with a breach of contract claim because "if the Court dismissed the declaratory-relief claim, Plaintiff's relief request will be wiped out in part," and "[t]hese additional remedies make this declaratory-relief claim different from 'normal' declaratory-relief claims, where only a declaration is sought." *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC*, No. 11-61577, 2011 WL 3843931, at *4 (S.D. Fla. Aug. 26, 2011); *see also Sunrise of Coral Gables Propco, LLC v. Current Builders, Inc.*, No. 22-21456, 2023 WL 1816390, at *5 (S.D. Fla. Feb. 8, 2023) (denying motion to dismiss where plaintiff sought a remedy through its declaratory relief claim that was "sufficiently different from the remedy for breach of contract").

Here, Counts 1 and 2 of the Amended Complaint assert causes of action for fraud and breach of contract against the Johnson Defendants under Florida common law. Am. Compl. ¶¶ 83–100. Count 8, on the other hand, seeks a declaratory judgment against all Defendants pursuant to 28 U.S.C § 2201. *Id.* ¶¶ 153–167. As to Plaintiff's claims for relief under both the fraud and breach of contract counts, Plaintiff alleges, in relevant part, the following:

> [a]s a direct, proximate, and foreseeable result of the conduct and omissions alleged above Plaintiff has suffered damages in an amount to be determined at trial, including, at a minimum, approximately $1.5 million in revenues due to Plaintiff from the sale of the Bugatti, or, in the alternative, $925,000 (representing the difference between the actual purchase price of the Cole Ferrari and the actual sale price of the Bugatti) plus conveyance of the Cole Ferrari (to the extent that the Bugatti is deemed to have been exchanged for the Cole Ferrari).

*Id*. ¶¶ 90, 99. As to the Amended Complaint's declaratory judgment count, Plaintiff alleges that it still "holds all rights and interest in the Bugatti" and that "[t]here are actual, presently existing, substantial, continuing controversies . . . that are not conjectural, hypothetical or contingent" concerning Defendants' alleged fraudulent transfer of the Bugatti. *Id*. ¶ 155. Accordingly,

Plaintiff requests this Court to issue a declaratory judgment that: "(a) Defendants' sale(s) of the Bugatti, and any subsequent sale(s) of the Bugatti, are illegitimate, unlawful, null and void; (b) Plaintiff is the rightful owner of the Bugatti; and (c) the Bugatti shall be returned to Plaintiff." *Id*. ¶ 166.

In their Reply, Defendants erroneously narrow the ambit of the Federal Declaratory Judgment Act and cite inapposite case law in doing so. For example, Defendants suggest that the *only* purpose of the Federal Declaratory Judgment Act is to declare whether a contract is ambiguous. *See* Reply at 7 ("[F]ailure to plead ambiguity requires dismissal of a declaratory relief claim.") (citing *Hillcrest E. No. 27, Inc. v. Lexington Ins. Co.*, No. 21-62546, 2022 WL 19266364, at *3 (S.D. Fla. Feb. 9, 2022)). But that is not the law. While it is true that "a legal dispute over the correct interpretation of a contract is an appropriate subject for declaratory relief," *Cantonis Co. v. Certain Interested Underwriters at Lloyds, London*, No. 18-81703, 2019 WL 3429962, at *3 (S.D. Fla. May 9, 2019), this is by no means the *only* purpose of the Act. Indeed, by its text, the Act also unequivocally provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. For example, a Court in this District recently allowed a declaratory-relief action nearly identical to Plaintiff's here to survive dismissal in a case where the plaintiff requested a declaration that it was the lawful owner of a disputed Lamborghini automobile. *Benidt Investments/Slinger, LLC v. Zakin*, No. 22-80761, 2022 WL 17988205, at *1–2 (S.D. Fla. Aug. 9, 2022).

Apart from Defendants' mischaracterization of the Federal Declaratory Judgment Act's scope, it is also clear that the declaratory relief requested here would "provide the plaintiff a form of relief unavailable under the breach of contract claim" as well as the fraud claim. *See Brodsky*, 2020 WL 231189, at *2; *see also Kenneth F. Hackett & Assoc., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1311 (S.D. Fla. 2010). With respect to the breach of contract

and fraud claims against the Johnson Defendants, Plaintiff requests money damages associated with the Johnson Defendants' alleged fraud and breach of contract, both of which are backwards-looking remedies. *See Brodsky*, 2020 WL 231189, at *2 (explaining that "claims for declaratory judgment must look forward, rather than backward, as any retrospective declaratory judgment would be equally solved by resolution of the breach of contract claim.").

However, with respect to Plaintiff's declaratory judgment count, Plaintiff also seeks a declaration that any future sales of the Bugatti are illegitimate; that Plaintiff is the rightful current owner of the Bugatti; and that the Court order the return of the Bugatti to Plaintiff. Am. Compl. ¶ 166. These requests are quintessentially forward-looking remedies that would not be available were Plaintiff to prevail on the breach of contract and fraud claims alone. *See Ocean's 11 Bar & Grill, Inc.*, 2011 WL 3843931, at *4.[3] Accordingly, Defendant's Motion to dismiss the declaratory relief claim as to all Defendants is denied.[4]

---

[3] Defendants' reliance on *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-25313, 2017 WL 1363344 (S.D. Fla. Apr. 5, 2017), is misplaced. Here, unlike in *Ministerio*, Plaintiff does not seek a declaration "with respect to the losses, costs, or expenses incurred as a result of its breach of contract action." Mot. at 11. Instead, Plaintiff seeks declarations related to the Bugatti distinct from the relief available under Plaintiff's breach of contract and fraud claims. *See* Am. Compl. ¶ 44. And Defendant's citation to *Woodard-CM, LLC v. Sunlord Leisure Prod., Inc.*, No. 20-23104, 2022 WL 2341802 (S.D. Fla. Mar. 31, 2022) is similarly unavailing. Reply at 7–8. In *Woodard-CM*, the court found that the requested specific performance and declaration of breach were fully encompassed within the Complaint's Breach of Settlement Agreement count as well as its Prayer for Relief. 2022 WL 2341802, at *4. Here, the Amended Complaint is critically different. For one thing, the Prayer for Relief specifically includes a heading titled "For a declaratory judgment" and then proceeds to list the three features of the declaratory relief being sought. Am. Compl. at 46. Even more significantly, unlike in *Woodard-CM* where the duplicative relief at issue concerned only specific performance, Plaintiff here also requests a declaration that would nullify the alleged fraudulent transfers and declare Plaintiff as the rightful current owner of the Bugatti. This relief would plainly be "wiped out in part" were the Court to deem it duplicative and dismiss it. *See Ocean's 11 Bar & Grill, Inc.*, 2011 WL 3843931, at *4.

[4] As explained above, the declaratory relief variant of Defendants' duplicative-count argument fails here. The Court does note, however, that the Amended Complaint's unjust enrichment and money had and received counts against the Johnson Defendants appear duplicative of the breach of contract claim against them. *See Roman v. Spirit Airlines, Inc.*, No. 19-61461, 2019 WL 9093467, at *3 (S.D. Fla. Oct. 20, 2019) (dismissing unjust enrichment claim where claim was "premised on the same operative facts as the breach of contract claims and there is no dispute that an express contract exists to govern the relevant relationship between the parties."); *Houston v. Centene Mgmt. Co., LLC*, No. 19-20620, 2019 WL 7971713, at *3 (S.D.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Consolidated Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. Count 9 is dismissed as to Mr. Williams individually *without prejudice and without leave to amend*. The Consolidated Motion to Dismiss is denied in all other respects.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of November, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

Fla. Oct. 20, 2019) (same).  But given that Defendants' Motion does not raise this argument, this issue is better left for summary judgment.